Michael B. Reynolds, Bar No. 174534
mreynolds@swlaw.com
Andrew B. Still, Bar No. 312444
astill@swlaw.com
Allison C. Murray, Bar No. 329336
acmurray@swlaw.com
SNELL & WILMER L.L.P.
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
Telephone:    714.427.7000
Facsimile:    714.427.7799

*Proposed* Attorneys for HPC Vineburn, LLC

UNITED STATES BANKRUPCTY COURT

CENTRAL DISTRICT OF CALIFORNIA – SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>HPC VINEBURN, LLC,<br><br>Debtor-in-Possession. | Case No. 1:25-bk-11455-MB<br><br>Chapter 11<br><br>**Reply to Opposition to Motion for Relief from Stay under 11 U.S.C. § 362**<br><br>Hearing Information:<br>Date:    September 26, 2025<br>Time:    10:00 a.m.<br>Place:    Courtroom 303<br>            21041 Burbank Blvd.<br>            Woodland Hills, CA 91367 |

Debtor-in-Possession HPC Vineburn, LLC ("Debtor") hereby submits its Reply to the Opposition to Motion for Relief from the Automatic Stay filed by Joseph F. Farivar Investment Group, Inc. ("FIG") and Bordan Shoe Company ("Bordan" and together with FIG, the "Judgment Creditors") [Docket No. 30] ("Opposition") and in support of its Motion for Relief from the Automatic Stay under 11 U.S.C. § 362 [Docket No. 21] ("Motion").[1]

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion and corresponding Memorandum of Points and Authorities.

4937-1774-8073

# I.

# **INTRODUCTION**

The Opposition represents a transparent effort by the Judgment Creditors to thwart an appeal pending in a completely different court. In attempting to do so, they rely on out-of-circuit and inapplicable case law for the dubious proposition that this Court should disregard the *Rooker-Feldman* Doctrine and assess the merits of the Appeal before allowing it to proceed. In fact, it is the Judgment Creditors who are attempting to collaterally squelch the Debtor's appeal rights and ability to obtain redress from the egregious procedural and evidentiary errors in the Superior Court that led to entry of the Judgment.

Further, Judgment Creditors provide no authority whatsoever for the novel proposition that the Appeal should be stopped in its tracks because this Bankruptcy Case was filed in "bad faith." In reaching this illogical conclusion, Judgment Creditors argue that this is "nothing more than a single asset real estate case" and just a "two-party dispute" borne after Debtor's "refusal" to post an appellate bond. Debtor does not dispute that this is a single asset real case – it indicated as much in its petition. Debtor also concedes that it was un***able*** – though not un***willing*** – to post an appeal bond to stay Judgment Creditors' enforcement efforts pending the Appeal. An appeal bond requires collateral worth at least one-and-a-half times the amount of the Judgment – Debtor does not have $18 million in unencumbered assets, as Judgment Creditors point out. At least not currently in light of the Property's unremediated state.[2] The Judgment Creditors' contentions that this is a two-party dispute and a bad faith filing are vastly pejorative oversimplifications of the issues at play in this case.

Debtor intends to propose a plan that calls for either the sale of the Property, a refinancing of the Property, and/or a restructuring of the nonconsensual debt encumbering the Property (i.e., the Judgment). Because of the pending Appeal and uncertainty regarding the Judgment Creditors' claim and the Debtor's remediation proposal pending with the Water Board, the plan will likely

---

[2] It should be noted at the outset that Debtor has taken every measure possible to address the issues at the Property and the Farivar Property. It has submitted an action plan to the Water Board, and is awaiting the Water Board's approval of that plan. *See* Seltzer Decl. submitted herewith. It is disingenuous and inaccurate to say that Debtor has done nothing to remediate the issues at both properties.

- 2 -

REPLY TO OPPOSITION TO
MOTION FOR RELIEF FROM STAY

4937-1774-8073

be a "toggle plan," contemplating one of two or more potential restructurings. This type of plan, while admittedly contingent on future events, is not impossibly complex, particularly in light of the nature of the Debtor's business and the fact that this is a single asset real estate case, as Judgment Creditors repeatedly note. Indeed, this type of reorganization would benefit all of Debtor's creditors – including Judgment Creditors – as well as Debtor's estate and its investors. This is a far better outcome than a forced execution sale by Judgment Creditors. Moreover, the ability to propose and confirm such a plan is a tool that Congress made available only in bankruptcy. This is a valid bankruptcy purpose and Judgment Creditors' claims of bad faith are baseless. Accordingly, Debtor respectfully requests that the Motion be granted and that it be authorized to proceed with the Appeal.

## II.

## THIS CASE WAS FILED IN GOOD FAITH AND FOR THE LEGITIMATE PURPOSE OF PRESERVING DEBTOR'S ASSETS

The crux of the Opposition – and Judgment Creditors' newly-filed motion to dismiss – is that this case was filed in bad faith. Judgment Creditors contend that the Court should summarily deprive the Debtor of its opportunity to proceed with its Appeal of the Judgment on the grounds they are certain this Bankruptcy Court will dismiss this case and allow them to foreclose on the Property. This illogical leap not only dispenses with procedural rules, it ignores the standards this Court should employ in considering the "good faith" required in filing a bankruptcy case. It also ignores that the Debtor seeks to accomplish that which *only* can be accomplished in this Court and under the Bankruptcy Code.

Although not set out in the Code, there is an implicit requirement that bankruptcy cases be filed in good faith, and lack of good faith may constitute grounds for dismissal or conversion under Section 1112(b)(4). *See, e.g., Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994); *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 614 (B.A.P. 9th Cir. 2014). The Ninth Circuit has explained:

> The existence of good faith depends on an amalgam of factors and not upon a specific fact. [citation] The bankruptcy court should examine the debtor's financial status, motives, and the local economic environment … Good faith is lacking *only* when the debtor's actions are a clear abuse of the bankruptcy process.

*Idaho Dep't of Lands v. Arnold (In re Arnold),* 806 F.2d 937, 939 (9th Cir. 1986) (emphasis added); *In re Marshall*, 721 F.3d 1032 (9th Cir. 2013); *In re Sullivan, supra*, 522 B.R. 604 (good faith lacking where there is a "clear abuse of the bankruptcy process"). The "good faith" inquiry focuses on "whether a debtor is attempting to **unreasonably** deter and harass creditors or attempting to effect a speedy, efficient reorganization, on a feasible basis." *In re Arnold*, 806 F.2d at 939. [emphasis added.] On the other hand, "bad faith" may arise if a debtor seeks to "achieve objectives outside the legitimate scope of the bankruptcy laws." *In re Marsch*, 36 F.3d at 828.

An inquiry as to good or bad faith is fact-intensive and should be made on a case-by-case basis, with no single set of factors to be employed, and with weight given to any such factor in the Court's discretion. *See, e.g., Legal Serv. Bureau, Inc. v. Orange County Bail Bonds, Inc. (In re Orange County Bail Bonds, Inc.)*, 638 B.R. 137, 149 (B.A.P. 9th Cir. 2022). The Ninth Circuit has implicitly recognized the need for caution in making such determinations, holding that good faith is "**only** lacking" when there is a "**clear abuse** of the bankruptcy process." *In re Arnold*, 806 F.2d at 939 (emphasis added).

In this regard, the filing of a bankruptcy case in the face of the crushing weight of a judgment is not bad faith in and of itself, and is not an unusual step for a debtor in financial straits facing a looming repayment of a large judgment. As the court said in *Marshall*:

> Filing a chapter 11 case because of the crushing weight of a judgment is not unusual . . . In all such cases, the debtor seeks to delay creditor action by filing a bankruptcy petition. Indeed, the express purpose of the automatic stay under § 362 is to provide a breathing space for the Appellant. The issue of dismissal for cause under § 1112(b) does not arise unless a debtor seeks *unreasonably* to deter or hinder creditors through abuse of the bankruptcy process.

*In re Marshall*, 298 B.R. 670, 683 (Bankr. C.D. Cal. 2003); *see also, e.g., Matter of Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 228 (2nd Cir. 1991) ("Filing a bankruptcy petition with the intent to frustrate creditors does not by itself 'establish an absence of intent to seek rehabilitation.' [cite] … Indeed, because a major purpose behind our bankruptcy laws is to afford a debtor some

breathing room from creditors, it is almost inevitable that creditors will, in some sense, be 'frustrated' when their debtor files a bankruptcy petition."); *Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986); *Matter of James Wilson Assocs.*, 965 F.2d 160, 170 (7th Cir. 1992) ("It is not bad faith to seek to gain an advantage from declaring bankruptcy—why else would one declare it?"). Moreover, a debtor's insolvency or "financial distress" is a critical factor in the good faith analysis. *See, e.g., In re Hayden*, No. 1:14-bk-11187-MT, 2015 WL 2148949, (Bankr. C.D. Cal. May 6, 2015) (no finding of bad faith where a debtor cannot pay litigation cost or satisfy judgment); *In re Stone Resources, Inc.*, 448 B.R.361, *rev'd on other grounds*, 2011 WL 401725 (adverse litigation that places the debtor in financial distress constitutes legitimate reason for filing bankruptcy, such as may preclude dismissal of chapter 11 case as "bad faith" filing).

Here, Judgment Creditors base their "bad faith" argument on Debtor's alleged "refusal" to obtain a supersedeas bond pending appeal. Judgment Creditors conclude that this case necessarily was filed in bad faith.

Not so. The Debtor did not refuse to bond the Appeal, but lacked the fiscal strength to do so. Judgment Creditors seized nearly all of the Debtor's cash pre-petition, obtained an assignment order to tie up future income, and fully encumbered the Debtor's main asset.

And the authorities relied on by Judgment Creditors for this illogical leap are inapposite to the facts of this case and contradict Judgment Creditors' very arguments. [*See* Opposition, pp. 9-10]. For instance, in *Mense*, the court specifically found that the debtor had sufficient assets to either satisfy the adverse pre-petition judgment, or post an appellate bond. *In re Mense*, 509 B.R. 269, 282 (Bankr. C.D. Cal. 2014) ("Mense admits that the purpose of the filing was to avoid posting an appeal bond, despite the fact that he has the net worth to either satisfy the judgment from his assets or to post the bond required by California law."). The *Marsch* Court similarly relied on the Bankruptcy Court's finding that "the debtor had the financial means to pay the judgment" and therefore upheld the Bankruptcy Court's bad faith finding. *In re Marsch*, 36 F.3d 825, 829 (9th Cir. 1994). In *Marsch*, the Court specifically did not "decide whether bankruptcy laws can be used to skirt state court procedural rules" regarding the posting of an appeal bond, but noted that "[s]everal bankruptcy courts have held that a debtor may use a Chapter 11 petition to

avoid posting an appeal bond if satisfaction of the judgment would severely disrupt the debtor's business." *Id.* at 828-29. Indeed, the Ninth Circuit has also recognized that the inability to post an appeal bond, coupled with a valid bankruptcy purpose, is not bad faith. *In re Marshall, supra*, 721 F.3d at 1048-49 ("[U]nlike in *Marsch* and *Boynton*, the record suggests that [debtors'] liquid assets were probably insufficient to satisfy the judgment or cover the cost of a supersedeas bond … [T]he Debtors' decision to file for bankruptcy does not indicate bad faith in light of the size of the [] Judgment and the potential cost of obtaining a bond."). Courts in this District have reached the same rational conclusion. *See, e.g., In re Hayden*, No. 1:14-bk-11187-MT, 2015 WL 2148949, (Bankr. C.D. Cal. May 6, 2015) (distinguishing between *Mense* and *Marsch* and finding no bad faith where a debtor cannot satisfy a judgment).[3] The authorities cited by Judgment Creditors actually support the notion that Debtor filed this case in good faith.

Here, by contrast, the Debtor does not dispute that it lacks the means to post an appellate bond, which under California law must be at least one-and-a-half times the amount of the judgment. Cal. Code Civ. Proc. § 917.1(b). [Seltzer Decl. ¶¶ 18-19]. Nearly all of Debtor's cash reserves were wiped out by the Judgment Creditors pre-petition, and the Judgment Creditors obtained an assignment order from the State Court, directing the tenant at the Property to pay all

---

[3] It should also be noted that nearly all of the other authority cited by Judgment Creditors is distinguishable from the facts of this case. For example, Judgment Creditors cite *In re Integrated Telecom Express, Inc.*, 384 F.3d 108 (3rd Cir. 2004). [Opposition, 9:13-15]. That case involved a debtor with assets of $107 million and debt of less than $26.5 million, nearly all of which was held by the debtor's landlord. The court found that the sole purpose of the bankruptcy filing was to take advantage of the Section 502(b)(6) cap and that the filing occurred only after the debtor specifically told the landlord that it would file bankruptcy if the landlord did not agree to settlement. *Id*. at 111.
Judgment Creditors also cite *In re Mack*, 347 B.R. 911 (Bankr. M.D. Fla. 2006). [Opposition, 9:23-27]. That case involved a stay relief motion to proceed with a RICO lawsuit against the debtor, who was allegedly fraudulently billing for medical treatments to insurance companies. *Id*. at 912-13. The debtor's pre-petition litigation conduct was so egregious that the District Court had entered a discovery sanction in the form of striking the debtor's answer and entering his default. *Id*. at 913-14. The Bankruptcy Court relied on the fact that "as explicitly found by the District Court, [the debtor] did not act in good faith … and stepped into this bankruptcy case with unclean hands." *Id*. at 914. *Trident Assocs. L.P. v. Metropolitan Life Ins. Co. (In re Trident Assocs. Ltd. Partnership)*, 53 F.3d 127 (6th Cir. 1995) and *Laguna Assocs. Ltd. Partnership v. Aetna Casualty & Surety Co.*, 30 F.3d 734 (6th Cir. 1994) involved debtors that suffered from "new debtor syndrome" – a "one-asset debtor created on the eve of foreclosure to isolate the property and [the secured creditor] from the rest of the [debtor affiliate's] real estate operations." *Trident Assocs.*, 53 F.3d at 132. These cases have no application to the facts present here, as the Judgment Creditors acknowledge that the debt encumbering the Property exceeds its value in its current state. [Opposition, 2:14-3:4].

- 6 -

REPLY TO OPPOSITION TO
MOTION FOR RELIEF FROM STAY

4937-1774-8073

1 rents to Judgment Creditors, leaving Debtor with no cash flow to pay its secured lender, property

2 taxes, insurance, or maintenance for the Property – let alone a bond premium of $500,000. [*See*

3 Opposition, 6:1-10; Seltzer Decl, ¶ 18]. Debtor cannot pledge the Property itself to secure an

4 appellate bond because the amount of the debt against the Property exceeds the current value of

5 the Property in light of its unremediated state. [Seltzer Decl. ¶¶ 11, 18]. Debtor's dire financial

6 straits and inability to post a bond do not constitute bad faith here, and are not the death knell

7 Judgment Creditors pretend to hear heralding the smothering of this case in its infancy.

8    This is particularly true here, because there is a legitimate business purpose for this case:

9 to afford the Debtor an adequate window of time in which to either sell the Property or restructure

10 the nonconsensual debt encumbering the Property (i.e., the Judgment) so as to not lose the

11 Property to Judgment Creditors' enforcement efforts. Refinancing the debt on the Property will

12 likely be accomplished through a combination of debt and capital raises in light of the fact that

13 the total debt exceeds the unremediated value of the Property. While Debtor intends to prosecute

14 the Appeal, it would effectively be mooted if the Property were lost to the Judgment Creditors by

15 way of an execution sale. It would also lose any hope of reorganization whatsoever without the

16 income generated by the Property. The power to cure defaults, restructure, extend and re-amortize

17 secured debts under a Chapter 11 Plan while under the protection of the automatic stay of section

18 362 are tools that Congress made available only in bankruptcy. They are not available in State

19 Court, the Appeals Court, or any other forum.

20    Finally, contrary to the allegations in the Opposition, this matter does not involve a "bad

21 faith" two-party dispute scenario. "Petitions in bankruptcy arising out of a two-party dispute do

22 not *per se* constitute a bad faith filing by the debtors." *In re Sullivan, supra*, 522 B.R. at 616

23 (quoting *In re Stolrow's, Inc.*, 84 B.R. 167, 171 (B.A.P. 9th Cir. 1988)); *see also, e.g., In re*

24 *Hawkeye Entertainment, LLC*, No. 1:23-bk-11501-MB, 2024 WL 1528460 at *6 (Bankr. C.D.

25 Cal. Apr. 8, 2024). Debtor has filed this case for the express purpose of maximizing value and

26 providing for payment in full of all allowed claims – including the claim of Judgment Creditors.

27 The fact that a significant percentage of the debt is held by the Judgment Creditors should not be

28 grounds for depriving Debtor the opportunity to prosecute this case and the Appeal. Moreover, as

set forth above, the ability to propose a plan is a reasonable and appropriate means of preserving the rights of all involved, including Judgment Creditors. This is not bad faith. It represents a legitimate and valid use of Chapter 11 by a Debtor seeking to preserve the viability of its business, and is *exactly* why Chapter 11 exists.

### III.

### RELIEF FROM STAY IS WARRANTED

In further opposition to the Motion, Judgment Creditors contend that Debtor has failed to meet its burden on the *Curtis* factors to justify this Court granting relief from stay to allow an appeal to proceed in California State Court. This not only lacks merit, but is a transparent effort by the Judgment Creditors to defeat the Appeal in this Court at the outset.

As an initial matter, Judgment Creditors fail to address the fact that mandatory abstention likely applies in that the State Court Action does not arise under or in title 11, could not have been commenced in a court of the United States and can be heard and swiftly decided by the Appeals Court. 28 U.S.C. § 1334(c)(2). The State Court Action patently does not "arise under" or "arise in" a case under title 11 as it was commenced in 2023, well before the filing of this case. The State Court Action could not have been commenced in a court of the United States as there is a lack of complete diversity between the parties, and the State Court Action does not involve a federal question. Moreover, the State Court Action has been pending since 2023, and the Appeal involves a judgment entered in 2024. Perhaps dispositive on the question, this Court cannot sit in review of the Judgment pursuant to the *Rooker-Feldman* Doctrine. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). As such, the Appeals Court is the *only* tribunal that can hear the Appeal. On this basis alone, Judgment Creditors' Opposition should be overruled.

Instead, Judgment Creditors insist that Debtor must outline its "purported bases for appealing the Judgment" in order to allow this Court to decide whether the Appeal should be allowed to proceed. [Opposition, 11:5-11]. In support of this, Judgment Creditors rely on *In re Caves*, 309 B.R. 76 (Bankr. M.D. Ga. 2004). [Opposition, 11:7-16]. Like much authority cited by

1 | Judgment Creditors, that case has little application here. *Caves* required the court to determine

2 | whether to grant relief from stay to allow a state court litigant to proceed with its racketeering

3 | claims against the debtor, which had not been substantially litigated in the nonbankruptcy

4 | proceeding. The court found that the "[m]ovant does not have a probability of prevailing by

5 | proving, by clear and convincing evidence, that [debtor] committed the alleged Georgia R.I.C.O.

6 | violations." *Id*. at 80. The court therefore denied the stay relief motion to proceed with those

7 | claims in state court and noted that its ruling on the issue of stay relief "should not be construed to

8 | be determinative of the ultimate issue in the pending litigation[]" and "[a]fter a dispositive motion

9 | or full trial, in the Bankruptcy Court, the Court could rule in favor of either party." *Id*. at 81. In

10 | other words, the bankruptcy court elected to exercise jurisdiction over the pending state court

11 | action, a result that is not possible in this case in view of the procedural status of the Appeal.

12 | Judgment Creditors' contention that this case should be construed to mean that this Court

13 | should assess the merits of an appeal of a state court judgment is entirely unreasonable and,

14 | indeed, belied by the *Rooker-Feldman* Doctrine. Nor should the Debtor be forced to outline its

15 | strategy in the Appeal and preview its arguments to the Judgment Creditors.

16 | Similarly, the Judgment Creditors' suggestion that because the supersedeas writ was

17 | denied leads to the "inescapable conclusion that the Court of Appeal believed the Debtor had no

18 | likelihood of success on its appeal" is without merit. [Opposition, 11:23-24]. As noted by

19 | Judgment Creditors, the Court of Appeal's ruling consisted of two sentences, one outlining the

20 | Court's review of documents and one denying the petition. [Opposition, 6-20-27]. The Court

21 | provided no rationale for its denial of the petition. [*Id*.; *see also*, Hedgpeth Decl. ¶ 12]. While the

22 | merits of the Appeal were briefly presented in the writ papers, the Court provided no information

23 | as to whether it considered the merits at all when denying the petition. [*Id*.] And there could have

24 | been any number of reasons as to why it was denied that are not predictive of the outcome on

25 | appeal. [*Id*.]

26 | Likewise without merit is Judgment Creditors' insinuation that the "Debtor has exhibited

27 | no sense of urgency in prosecuting th[e] appeal, which has now been pending for 9 months

28 | without any substantive action except for Debtor's unsuccessful Writ Petition." [Opposition, 7:3-

1  5]. Debtor timely filed its Appeal on December 27, 2024. [Hedgpeth Decl. ¶ 11.] On January 7,
2  2025, it designated the record for the Appeal and requested and paid the State Court for the
3  transcript. [*Id*.] The transcript is part of the record and its preparation triggers the briefing
4  schedule on appeal. [*Id*.] Debtor's appellate counsel has contacted the Appeals Court and the
5  Superior Court on multiple occasions, requesting information regarding the status of the transcript
6  preparation. [*Id*.] According to the State Court, there was an issue with a co-defendant/appellant's
7  designation of and payment for the transcript, but that issue now appears to be resolved. [*Id*.]
8  Nevertheless, the parties continue to wait for the State Court to process the transcript. [*Id*.] While
9  Debtor does not control the speed at which the State Court produces such documents, it intends to
10 comply with all court and filing deadlines related to the Appeal. Indeed, the Debtor is anxious to
11 see this issue resolved.

12  Setting these issues aside, and to the extent the Court believes them to be helpful in
13 assessing whether to grant relief from stay to allow Debtor's Appeal to proceed, a portion of the
14 issues Debtor intends to raise on appeal are outlined in the Declaration of Tiffany Hedgpeth,
15 submitted herewith. [*Id.*, at ¶¶ 4-9.]

16  Judgment Creditors' contention that the applicable *Curtis* factors weigh against granting
17 relief is a transparent effort to moot the Appeal and stop the Debtor's prosecution of it. Judgment
18 Creditors contend that the stay should not be lifted because (1) there already has been a complete
19 resolution of the issues by the Superior Court, (2) the Appeal will stretch out this bankruptcy case
20 by 12-18 months while it plays out in court, (3) administrative expenses will be incurred with no
21 reasonable prospect of success, (4) the Appeal does not serve the interests of judicial economy,
22 (5) the merits have already been determined by the Superior Court, and (6) administrative
23 expenses will be borne by creditors with no benefit to the estate. [Opposition, 12:4-22]. None
24 have merit.

25  Judgment Creditors' first, fourth and fifth arguments essentially demand this Court opine
26 on the merits of the Appeal and dispose of Debtor's state court appellate rights. It is undisputed
27 that the Judgment has been entered in favor of Judgment Creditors. Debtor has filed an appeal of
28 that Judgment and therefore there is not complete resolution. The Appeal is not a waste of judicial

resources; it is an exercise by Debtor of its due process rights. Judgment Creditors' second, third and sixth arguments also appear to disregard the parameters of the Bankruptcy Code. Debtor intends to present a plan of reorganization that contemplates contingencies for successful and unsuccessful outcomes on appeal. Moreover, the cost of funding the Appeal derives from various insurance policies wherein the insurer has the option of funding litigation or payments losses, so there is no monetary burden on the estate. Debtor anticipates confirming a plan long before the Court of Appeal makes its decision. If the Appeal is successful, it will massively benefit the Estate by overturning a $12 million secured claim against the largest asset of the Estate. If the Appeal is not successful, there is little harm to the Estate because there never would have been any unencumbered assets for the benefit of general unsecured creditors.[4]

Under any circumstance, prosecution of the Appeal necessarily impacts administration of the Estate. If relief from stay is not granted to allow the Debtor to proceed with the Appeal, a real challenge on the merits of the Judgment will be delayed until the automatic stay expires upon plan confirmation, to the further detriment of the Estate and its creditors.

## IV.

## THE ALTERNATIVE RELIEF REQUESTED IN
## THE OPPOSITION SHOULD BE DENIED

In the Opposition, Judgment Creditors request that to the extent the Court grants the Motion, such relief "should extend to all aspects of the Judgment so that the Judgment Creditors may exercise their right to liquidate and enforce the Judgment against the Debtor." [Opposition, 13:3-5]. This type of affirmative relief should be requested, if at all, by way of separate motion. Granting relief from stay to allow the Appeal to proceed and granting relief from stay to allow Judgment Creditors to execute a forced sale of the Property are dramatically different things. The

---

[4] Judgment Creditors also suggest that Debtors' scheduled malpractice claims against its former lawyers indicates that the appeal lacks merit. [Opposition, 11:27-12-3]. The notion that both counsel and the State Court committed error are not mutually exclusive, and both can be true. Rather, one could argue that the Judgment Creditors quite obviously recognize the risk on appeal, and that is why they oppose the Debtor's otherwise routine, uncontroversial Motion. In any event, the Debtor has a duty to investigate all of its assets, actual and potential, and this is a potential asset. Ironically, recovery on such a claim would benefit Judgment Creditors.

Debtor's stay relief Motion seeks to expedite the liquidation of claims against the estate. The Judgment Creditors' alternative stay relief request seeks to strip assets from the estate, without which a plan cannot be confirmed.

## V.
## CONCLUSION

For the foregoing reasons and those set forth in the Motion, Debtor respectfully requests relief from stay to proceed with the Appeal. Moreover, Debtor seeks waiver of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure. Finally, Debtor seeks such other and additional relief as the Court deems appropriate.

Dated: September 19, 2025                    SNELL & WILMER L.L.P.


By:   /s/ Michael B. Reynolds
          Michael B. Reynolds
          Andrew B. Still
          Allison C. Murray

*Proposed* Attorneys for HPC Vineburn, LLC

- 12 -

REPLY TO OPPOSITION TO
MOTION FOR RELIEF FROM STAY

4937-1774-8073