1 │ Michael B. Reynolds, Bar No. 174534
    │ mreynolds@swlaw.com
2 │ Andrew B. Still, Bar No. 312444
    │ astill@swlaw.com
3 │ Allison C. Murray, Bar No. 329336
    │ acmurray@swlaw.com
4 │ SNELL & WILMER L.L.P.
    │ 600 Anton Boulevard, Suite 1400
5 │ Costa Mesa, California 92626-7689
    │ Telephone:    714.427.7000
6 │ Facsimile:     714.427.7799

7 │ *Proposed* Attorneys for HPC Vineburn, LLC

8

9 │                    UNITED STATES BANKRUPCTY COURT

10 │      CENTRAL DISTRICT OF CALIFORNIA – SAN FERNANDO VALLEY DIVISION

11

12 │ In re:                                    Case No. 1:25-bk-11455-MB

13 │ HPC VINEBURN, LLC,                        Chapter 11

14 │                Debtor-in-Possession.      **Declaration of Tiffany R. Hedgpeth**

15 │                                           Hearing Information:
                                              Date:     September 26, 2025
16 │                                           Time:     10:00 a.m.
                                              Place:    Courtroom 303
17 │                                                     21041 Burbank Blvd.
                                                        Woodland Hills, CA 91367
18

19

20

21 │      I, Tiffany R. Hedgpeth, hereby declare as follows:

22

23 │      1.      I am a partner with Edgcomb Law Group, LLP, counsel of record for Debtor-in-

24 │ Possession HPC Vineburn, LLC ("Debtor") in that certain lawsuit styled as *Joseph F. Farivar*

25 │ *Investment Group, Inc. vs. HPC Vineburn, LLC, et al*. (the "Lawsuit"), pending in the Los

26 │ Angeles County Superior Court (the "Superior Court") as Case No. 23 STCV00319. I am in the

27 │ process of preparing my firm's application to be employed as special litigation counsel for the

28 │ Debtor in connection with the Lawsuit and, more particularly, the Debtor's appeal of the

SNELL
& WILMER

4922-3873-3674

1  judgment entered in the Lawsuit, which appeal is pending in the Court of Appeals for the Second

2  Appellate District (the "Court of Appeals"), Appeal No. B343432 (the "Appeal").

3

4     2.    Since graduating from UCLA School of Law in 1994, I have amassed over thirty

5  years of experience in environmental compliance and litigation work, including my representation

6  of the Debtor in the Lawsuit and Appeal. My firm was counsel for the Debtor after the case was

7  initially filed in January 2023.  Our firm was replaced with Gordon Rees, LLP, which was

8  selected by Debtor's insurer, in September 2023. In May 2025, we were again retained to

9  represent Debtor in the Lawsuit and in the Appeal.  I am the lawyer at my firm principally

10  responsible for representing the Debtor in the Lawsuit and Appeal and am very familiar with the

11  procedural history of the Debtor's dispute with Farivar Investment Group, Inc. ("FIG").  I have

12  also gained a considerable familiarity with the factual background underpinning the Lawsuit and

13  FIG's claims against the Debtor.  The matters set forth herein are of my own personal knowledge

14  or I have learned them by reference to matters contained within the public record, including but

15  not limited to filings with the Superior Court, the Official Records of the County of Los Angeles,

16  and the Court of Appeals, and my review of the legal files provided by Gordon Rees, LLP and

17  those maintained by my firm.  If called upon to do so, I could and would competently testify to

18  the truth of the matters set forth herein, except those matters specifically set forth on information

19  and belief, as to which I am informed and believe them to be true.  As to those matters set forth as

20  opinions, I am qualified to offer these opinions based on nearly thirty-one years of experience as a

21  practitioner in state and federal courts in California addressing environmental disputes of a nature

22  similar or identical to that of the Lawsuit and Appeal.

23

24     3.    I have read and studied the papers FIG filed in opposition to Debtor's motion for

25  relief from stay to prosecute the Appeal ("Opposition to Lift Stay"), as well as its motion to

26  dismiss the Debtor's bankruptcy case ("MTD") (collectively, "FIG Papers").  I would note that

27  while some of the underlying facts identified by FIG are not disputed, many others are hotly

28  contested.  Among the uncontested facts are that the Debtor's bankruptcy was precipitated in

Reply Declaration of Tiffany R. Hedgpeth

1  large measure by the Superior Court's November 7, 2024, judgment in the Lawsuit against the

2  Debtor (and the predecessor property owner, Meruelo Maddox Properties-119 Vineburn Street,

3  LLC ("Meruelo Maddox"), for approximately $12.2 million (the "Judgment"), and FIG's

4  aggressive efforts to enforce that Judgment.

5

6      4.    While the Debtor disputes FIG's contention that the likelihood of success on the

7  merits of the Appeal is an important factor for determining whether to grant its requested relief,

8  one purpose of this Declaration is to refute FIG's corollary contention that the Appeal lacks merit.

9  On the contrary, I believe that the Judgment – entered as a result of the Superior Court granting

10 FIG's motion for summary adjudication of its claims against the Debtor for continuing trespass,

11 continuing nuisance, negligence, negligence per se and declaratory relief – was only possible due

12 to obvious and significant errors by the Superior Court, which warrant reversal of the judgment.

13

14     5.    As an initial matter, one of the issues FIG glosses over in the FIG Paper is the

15 extent to which the Debtor and its property at 1919 Vineburn Avenue, Los Angeles, California

16 (the "Debtor Property") are **not** responsible for the contamination at FIG's contiguous,

17 downgradient property (the "FIG Property").  Specifically, FIG states that the Debtor's consultant

18 concluded in a report that the Debtor Property had **contributed** to the 1,4-Dioxane groundwater

19 issues at the FIG Property… [*See*, Declaration of Sean A. McCormick, Docket No. 31, at ¶ 11.]

20 But FIG then misleads the Court by contending this is an admission by the Debtor that the Debtor

21 Property is **solely** responsible for the contamination of both properties. [Id.] However, the

22 Debtor has consistently contended in the Lawsuit that the **FIG Property** itself is the source of

23 much, if not substantially all, of the contamination that caused FIG's purported damages.  The

24 report cited by Mr. McCormick is consistent with the Debtor's theory of contributory liability.

25

26     6.    FIG also argues, starting on page 4 of its Opposition to Lift Stay [the "FIG

27 Opposition," Docket No. 30], that the "Debtor failed to submit admissible evidence to show a

28 dispute of material fact on any claim."  While it is correct that the Superior Court concluded as

1    much, the Debtor contends the Superior Court glaringly and obviously erred in this regard and

2    that the summary judgment must be overturned as a result.

3

4        7.        For instance, on the issue of damages, FIG introduced expert declaration testimony

5    of Steve Luis contending FIG had suffered damages of $11,779,000 – the amount he claims was

6    needed to remediate the FIG Property. [FIG Opposition, p.4] Here, the Superior Court

7    committed at least two errors. First, it ignored the fact that there was contradictory admissible

8    evidence, in the form of the Debtor's expert declaration testimony (Adam Love, PhD) challenging

9    the reasonableness of Mr. Luis' assumptions, identifying Mr. Luis' costs as excessive and

10   unreasonable, critiquing Mr. Luis' remedy approach as not addressing historical releases of

11   contaminants from the FIG Property, and providing a cost estimate of only $5.8 million to address

12   groundwater contamination at both properties. A true and correct copy of that declaration is

13   attached hereto as Exhibit "A." Notably, the Superior Court *overruled FIG's objections* to Dr.

14   Love's damages testimony, but then mistakenly ruled that there was no admissible evidence to

15   contradict Mr. Luis' conclusions. [*See*, the Superior Court's Minute Order, pp. 11-12, 16,

16   attached to Mr. McCormick's Declaration, Docket No. 31, page 133 of 271.] By refusing to

17   consider evidence on the issue of damages that it had already ruled was admissible, the Superior

18   Court committed reversible error by summarily adjudicating claims on a critical element of which

19   – damages – remained subject to material factual dispute. FIG did not file a cross-appeal

20   challenging the Superior Court's ruling that FIG's objections to Debtor's expert's damages

21   opinion were overruled. Therefore, the Appellate Court need only evaluate the Superior Court's

22   complete failure to consider material admissible evidence on a key element of FIG's claims in

23   order to overturn the Superior Court's decision.

24

25       8.        Second, the Superior Court erred in issuing a money judgment to FIG without

26   requiring any of the proceeds to be used to clean up the contamination that allegedly generated

27   FIG's damages. So FIG is getting a double recovery as the Judgment requires payment to FIG

28   based on the cost of remediation, but  the Los Angeles Regional Water Quality Control Board

Reply Declaration of Tiffany R. Hedgpeth

1  ("LA Water Board") has ordered Debtor to investigate the scope of its releases, and as recognized

2  by FIG's own expert, Mr. Luis, it is expected that the LA Water Board will require Debtor to

3  remediate contamination released from the Debtor Property. Notably, the FIG Property has been

4  under the oversight of the LA Water Board for decades (the initial investigation began in 1993)

5  due to historical operations that caused substantial contamination at  the FIG Property.  Because

6  of this, the California State Water Resources Control Board's online Geotracker database contains

7  a large file for the FIG Property, where workplans, reports, and communications with the LA

8  Water Board are to be uploaded and available to the public.  (*See*

9  https://geotracker.waterboards.ca.gov/profile_report.asp?global_id=SL2045M1624.) Based on a

10  review of the database, FIG has yet to utilize any of the hundreds of thousands of dollars it has

11  seized post-Judgment from the Debtor to initiate any remediation work on the FIG Property.

12

13      9.      It is my belief that the Superior Court also made errors when it sustained various

14  objections to authentication of various documents that showed historical use of trichloroethane at

15  the FIG Property.  For example, evidence was introduced in the Superior Court to demonstrate the

16  unremarkable and undisputed proposition that 1,4-Dioxane is a stabilizer used in trichloroethane

17  products.  The Superior Court took judicial notice of "the existence, content and authenticity" of a

18  South Coast Air Quality Management District operating permit that was issued to Alba Industries,

19  which later moved its operations to the FIG Property.  The permit identified Alba Industries as

20  using trichloroethane in its operations. Notwithstanding its own judicial notice, the Superior

21  Court sustained FIG's authentication objection to the Debtor's and Dr. Love's use of that permit

22  in its defense against FIG's motion for summary adjudication.

23

24      10.     We have identified additional errors in connection with the Judgment.  This Reply

25  Declaration, however, is not intended to be an exhaustive expository on the merits.  Rather, my

26  intent is to provide this tribunal with a basic understanding of the proceedings that led to entry of

27  the Judgment, the status of the Appeal and related post-Judgment proceedings, and the

28  earnestness of the Debtor's efforts to liquidate the amount of FIG's claim against the estate.

1

2        11.    In its MTD, p. 12, FIG misleads this Court, suggesting Debtor did not request

3    preparation of the transcript until June 16, 2025. As FIG should know from the court docket, this

4    simply is not true. The Debtor timely filed the Appeal on December 27, 2024.  On ***January 7,***

5    ***2025***, the Debtor timely designated the record for Appeal and requested and paid for the Superior

6    Court transcript.  The transcript is part of the record and its preparation triggers the briefing

7    schedule for the Appeal.  However, I am informed and believe, based on information my firm has

8    received from the Superior Court and the Appellate Court, that there were delays with respect to

9    Meruelo Maddox's (also an Appellant) designation of and payment for the transcript.  Although

10   Debtor had requested and paid for the transcript in January, my firm was told the court would not

11   process the request until all Appellant's submitted payment.  As a result, the briefing schedule for

12   the Appeal has not yet been issued.  My firm has contacted the Superior Court and/or Appellate

13   Court multiple times (5) and have been told there is nothing we can do to hasten the process.

14   Once the transcript is complete, the Debtor will submit its opening brief within 30 days.  FIG will

15   then have 40 days to file the appellee's brief, and the Debtor will have another 20 days to reply.

16   Oral argument will then be scheduled, and a written decision should be  issued within 90 days

17   thereafter. FIG's argument that Debtor has exhibited no sense of urgency to prosecute its appeal

18   is patently false. Debtor has taken every available action to move its very strong appeal forward,

19   notwithstanding FIG's efforts to prevent the appeal from occurring (either through decimating

20   Debtor before it has the opportunity to have its day in court or seeking to keep the Appeal stayed).

21

22       12.    FIG correctly notes that the Court of Appeals denied the Debtor's petition for a

23   writ of supersedeas.  What FIG ignores is that the Court of Appeals provided no rationale

24   whatsoever for its denial.  It is impossible to know whether the Court of Appeals even considered

25   the merits at all, or made its determination on the grounds that it did not perceive an emergency

26   that could not be remedied by a restitutionary award against FIG if the Appeal resulted in

27   subsequent reversal of the Judgment and remand to the Superior Court. While such rationale fails

28   to appreciate the risk that FIG would irreparably destroy the Debtor's business if allowed to

4922-3873-3674

1    foreclose on and take over the Debtor's main asset – the Debtor Property – pending the Appeal,

2    this well could have been the basis for the denial of the petition for writ of supersedeas.

3

4          13.     The Debtor intends to continue complying with applicable orders from the LA

5    Water Board to investigate and remediate contamination at the Debtor Property. The Debtor

6    (through its consultant, Roux Associates, with whom I work closely) has had communications

7    with the LA Water Board (as recently as September 5, 2025) regarding the next investigation that

8    the Water Board has stated must be performed before remediation can be implemented.  Roux

9    Associates, is preparing the workplan for submittal to the LA Water Board, which is expected to

10   be submitted within the next couple of weeks. The investigations have been paid for by

11   environmental pollution liability policies that the Debtor has maintained since its acquisition of

12   the Debtor Property.

13

14         I declare under penalty of perjury under the laws of the United States that the

15   foregoing is true and correct.  Executed this _1_6_ day of September 2025, at Stevenson

16   Ranch, Los Angeles County, California.

17

18   Tiffany R. Hedgpeth

19

20

21

22

23

24

25

26

27

28

Reply Declaration of Tiffany R. Hedgpeth

4922-3873-3674

# EXHIBIT A

DECLARATION OF ADAM H. LOVE, PH.D.

I, Adam H. Love, Ph.D., declare as follows:

1. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify to the matters stated herein to a reasonable degree of certainty as exercised by environmental professionals.

2. I am Vice President and Principal Scientist at Roux Associates, Inc. I was awarded a Bachelor's degree in Geosciences in 1996, a Master's degree in Material Science and Mineral Engineering in 1998, and a Doctorate degree in Civil and Environmental Engineering in 2002. I have over twenty-five years of experience in environmental science/engineering, use of forensic signatures to determine source and timing of contamination, and contaminant assessment, transport, and remediation. Attached as **Exhibit A** is a true and correct copy of my curriculum vitae. My relevant experience and qualifications are accurately stated therein.

3. I have been retained by Gordon Rees Scully Mansukhani, LLP on behalf of HPC Vineburn, LLC, owner of the property at 1919 Vineburn Avenue, Los Angeles, CA.

4. I have reviewed the documents listed in **Exhibit B**.

5. I submit this declaration in support of HPC Vineburn, LLC opposition to the Plaintiffs Motion for Summary Adjudication as related to the sources of environmental impacts to groundwater beneath both 1919 Vineburn Avenue and 4335 Valley Boulevard, and the reasonably expected environmental cleanup costs.

6. As an environmental investigation and cleanup expert, I continue to lead site investigation and cleanup efforts at contaminated sites throughout the United States. As

part of site investigations, I routinely review historical data, apply scientific methods to assess release histories, evaluate contamination transport pathways, and utilize environmental forensic methodologies to determine where multiple sources of contamination contribute to observed environmental impacts. It is common that at older sites of industrial operations, the historical record on operational details and environmental conditions is sparse. In such cases, the recognized environmental forensic methodology is to reconstruct the operational history specifics, assess the contemporaneous standards of practice in the industry, understand the nature of releases from potential release mechanisms, and evaluate the extent and magnitude of contamination in the context of potential fate and transport within realistic conceptual models. I am routinely asked to budget for cleanup at sites where Roux is hired by the party leading the cleanup effort, and also often asked to review the reasonableness of the budget of other consultants when my client is being asked to share in cleanup costs where another party is leading the cleanup effort.

**1,4-Dioxane Groundwater Contamination is Reasonably Expected to Have Migrated onto 4335 Valley Boulevard that Originated at 1919 Vineburn Avenue.**

7.  Documents report that the property at 1919 Vineburn was developed in 1950 for industrial use and was subsequently utilized by a series of industrial operations: Standard Coil Product (1951-1956), Triangle Industries (1957-1982), and Nardon Manufacturing (1984-1993) (Hazard Management Consulting, 2020).

8.  Nardon Manufacturing operations included metal fabrication operations that involved chlorinated solvent use and vapor degreasing. A clarifier was used as wastewater pretreatment before discharge into the sewer. The South Coast Air Quality Management District (SCAQMD) permitted 1,1,1-trichloroethane (1,1,1-TCA) for the vapor

degreasing at the property (Hazard Management Consulting, 2020). 1,4-dioxane is a known stabilizer used in 1,1,1-TCA.

9. Site investigations prior to 2020 identified chlorinated solvents impacts (1,1,1-TCA, tetrachloroethylene (PCE), trichloroethylene (TCE), and 1,1- dichloroethylene [1,1-DCE]) in soil gas and groundwater at the 1919 Vineburn property (Hazard Management Consulting, 2020).

10. In 2020, site investigations identified 1,4-dioxane impacts at the 1919 Vineburn property. The highest 1,4-dioxane concentration observed within the building footprint was 154 micrograms per liter ($\mu$g/L). An observation of 196 $\mu$g/L was measured near the fence line of 4335 Valley Boulevard (Hazard Management Consulting, 2020) adjacent to the primary 1,4-dioxane source area on that property, as shown in **Exhibit C**.

11. Groundwater flow in this area travels from the 1919 Vineburn property toward the 4335 Valley Boulevard property.  Thus, the 2020 site investigation concluded that some of the chemical impacts observed on the 1919 Vineburn property are reasonably expected to have migrated onto the downgradient 4335 Valley Boulevard property (Hazard Management Consulting, 2020).

**Additional 1,4-Dioxane Contributions to Groundwater Contamination Originate from 4335 Valley Boulevard**

12. Documents report that the property at 4335 Valley Boulevard was developed in 1946 for industrial use and was subsequently utilized by a series of industrial operations: Square D (1946-1987) and Alba Industries (1987-2000) (Smith-Emery Company, 1993).

13. Square D operations included electrical component manufacturing (Geosyntec, 2023). Alba Industries operations included furniture manufacturing that involved chlorinated solvent use in adhesives (Smith-Emery Company, 1993).

14. Just prior to occupying 4335 Valley Boulevard, a SCAQMD 1985 Permit to Operate for Alba Industries at 4301 Valley Boulevard (property adjacent to 4335 Valley Boulevard) included spray equipment using "adhesives compounded with 1,1,1-trichloroethane and/or methylene chloride". The SCAQMD application process and calculation section for spray equipment operation includes the handwritten note that "adhesive is compounded entirely with 1,1,1- trichloroethane as solvent, approx. 8 lb per gallon" and a typed description that "Bond Well Adhesive Cl040 contains the solvent 111-Trichloroethane in a concentration of 80%, that is to say eights pounds per gallon" as shown in **Exhibit D**. The SCAQMD application indicates 60 pounds of adhesive was used per day, which then equates to 48 pounds of 1,1,1-TCA used per day. The SCAQMD received a location change in 1988 where Alba Industries indicates it moved its spray booth operations from 4301 Valley Boulevard to 4335 Valley Boulevard as shown in **Exhibit E**. The significant use of 1,1,1-TCA continued when Alba Industries occupied 4335 Valley boulevard, as 1,1,1-TCA was also documented in the 1993 Phase I Environmental Assessment through the inclusion of the 1992 hazardous materials inventory that listed the yearly quantity as 250 gallons of "Bond Well Cl040 Adhesive" in 55-gallon drum quantities for 4335 Valley Boulevard as shown in **Exhibit F**. 1,4-dioxane is a known stabilizer used in TCA.

15. Site investigations identified chlorinated solvents impacts (1,1,1-TCA, 1,1-dichloroethane (1,1-DCA), PCE, TCE, and 1,1-DCE) in soil and groundwater at the 4335 Valley Boulevard property (Geosyntec, 2023).

16. In 2003, a site investigation initially identified 1,4-dioxane groundwater impacts at the 4335 Valley Boulevard property. A follow-up investigation was performed in 2011 to

address the data gap associated with 1,4-dioxane in groundwater (Geosyntec, 2023). The highest 1,4-dioxane concentration observed on the property was 510 µg/L as shown in **Exhibit C**. This location corresponds with Area of Concern 2 (previous documented sources area where there were impacts to soil and groundwater), which was the location of painting, parts cleaning, and a sump as shown in **Exhibit G**.

**An Equitable Allocation of 1,4-Dioxane Cleanup Costs Among 1919 Vineburn Avenue and 4335 Valley Boulevard is Appropriate**

17. 1,1,1-TCA was used by Nardon at 1919 Vineburn Avenue. 1,4-dioxane is a known stabilizer used in 1,1,1-TCA. 1,4-dioxane impacts are observed on the 1919 Vineburn Avenue property.

18. 1,1,1-TCA was used by Alba Industries at 4335 Valley Boulevard. 1,4-dioxane is a known stabilizer used in TCA. 1,4-dioxane impacts are observed on the 4335 Valley Boulevard property. The highest concentrations of 1,4-dioxane in groundwater were detected on the 4335 Valley Boulevard property.

19. Because groundwater flows from the 1919 Vineburn Avenue property toward the 4335 Valley Boulevard Property, it appears the groundwater impacts from the two operations have co-mingled.

20. Since discovery is not complete, I have not yet performed an analysis of the Gore and Torres factors that would typically be evaluated in opining on the basis for, and outcome of, an appropriate equitable allocation analysis of 1,4-dioxane remediation costs.

**While There is Still Significant Uncertainty based on Incomplete Site Investigation and Not-Yet-Determined Regulatory Requirements, Based on the Current Available Data and an Expectation that the LARWQCB will Require Cleanup to Drinking Water**

5

**Standards, the Cost to Remediate the Co-mingled 1,4-Dioxane Contamination from both 1919 Vineburn Avenue and 4335 Valley Boulevard is Reasonably Expected to be $5.0M**

21. I have evaluated the currently available site investigation data and conditions on both 1919 Vineburn Avenue and 4335 Valley Boulevard properties. Neither 1919 Vineburn nor 4335 Valley Boulevard has been investigated fully to enable a cleanup remedy to be fully designed. In addition, the LARWQCB has not determined what the requirements will be for cleanup of groundwater from these locations. Based on the information reviewed, Roux's technical approach reflects an assumption that the LARWQCB will require groundwater cleanup to drinking water standards and thus would be to use in-situ chemical oxidation (ISCO) targeted in the source areas of both properties to rapidly decrease the areas of highest 1,4-dioxane concentration in parallel with installation of a downgradient pump and treat system to remove and hydraulically contain the residual groundwater impacts. This approach anticipates cleanup would take approximately 5 years.  There are many uncertainties associated with additional site investigation and regulatory negotiations that could impact this estimate which could results in lower costs than estimated here.

22. Given the assumptions described above, if Roux were to put forth a proposal for cleanup of the 1,4-dioxane groundwater impacts on both properties as described above, the proposal would reflect a total cleanup cost of $5.0M (with an additional contingency of $0.8M) as shown in **Exhibit H**.

23. Plaintiff's Expert, Steven Luis, has opined that 1,4-dioxane groundwater cleanup costs are expected to be $12.0M (with an additional contingency of $2.4M) (Declaration of

Steven J. Luis, 2024).  I have reviewed the information provided with Mr. Luis' cost estimate and find his technical approach and associated cost estimate to be inefficient and overly conservative, and thus unreasonable.

24. Mr. Luis does not acknowledge the 1,4-dioxane release(s) that occurred on the 4335 Valley Boulevard property, and he states that his remedy is targeted only at treatment of 1,4-dioxane migrating from the 1919 Vineburn property onto the 4335 Valley Boulevard property (Declaration of Steven J. Luis, 2024).  Because of this, it is unclear if Mr. Luis' purports that his proposed remedy would be sufficient to cleanup the groundwater impacts from both properties.

25.  The inflated costs presented by Mr. Luis result from a set of unreasonable assumptions that he incorporates into his analysis: a) he assumes that no remedial activities can be performed on the 1919 Vineburn property, which creates an inefficient remediation configuration that prevents any 1,4-dioxane removal/treatment at 1919 Vineburn until it migrates to the 4335 Valley Boulevard property and greatly extends the time needed for remediation; b) he assumes the targeted ISCO treatment zone to be 20 to 50 feet below ground surface, even though groundwater monitoring results suggest the applicable treatment zone of 17 to 40 feet below ground surface, a 30% increase in the amount of ISCO chemical needed for injections; c) he assumes that implementation of the injection remedy does not work with the expected efficiency typically achieved when choosing ISCO technology over a pump and treat technology approach, even after feasibility/pilot testing, and as a result suggests 20 years of treatment and 13 rounds of injections will be needed (Declaration of Steven J. Luis, 2024).  The inefficient approach proposed by Mr.

Luis also extends to all of the associated parallel costs in the estimate related to monitoring, reporting, oversight and project management out for 20 years.

26. As a result of Mr. Luis' inefficient technical approach that does not meet with the standards of practice in the environmental industry, his estimated costs are inefficient and overly conservative, and thus excessive and unreasonable.

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.

Executed this 6th day of September, 2024, in Alameda County, California.

_____
Adam H. Love, Ph.D.

# Exhibit A



PROFESSIONAL PROFILE



# Adam H. Love, PhD

## Vice President | Principal Scientist
## Director of Risk Management and Litigation Services

### EXPERIENCE SUMMARY

Over twenty-five years of experience in environmental science/engineering, use of forensic signatures to determine source and timing of contamination, and contaminant assessment, transport, remediation, and apportionment/allocation.

- Roux, Board of Directors, 2020-Present; Director of Risk Management and Litigation Services 2020-Present; Vice President 2016-Present, Litigation Practice Group Leader 2016-2020; Principal Scientist, 2013-Present.
- Johnson Wright Inc., Principal Scientist, Environmental Forensics Practice Leader 2009-2013.
- Lawrence Livermore National Laboratory, Principal Investigator/Scientist, Forensic Science Center, 2002-2009.
- California Department of Health Services. Drinking Water Program/Technical Programs Branch, Standards and Technology Unit Staff, 2000-2002.
- University of California, Berkeley, Graduate Student Researcher/Instructor, 1996-2002.
- Franklin & Marshall College, Undergraduate Researcher/Laboratory Teaching Assistant, 1994-1996.

### TECHNICAL SPECIALTIES

Dr. Love directs Roux's Risk Management and Litigation Services while providing forensic litigation support and expert witness services to clients throughout the United States on environmental litigation, environmental insurance coverage, product liability, and toxic tort related matters. Dr. Love's experience includes strategic and technical analysis and guidance spanning numerous complex groundwater, soil, sediment, soil vapor and air contaminated sites, including assessments of human health and ecological risk. He has also provided technical analyses related to public policy for state legislative actions and federal advisory panels on a range of proposed environmental laws, regulations, and policy implementation.

Dr. Love's areas of expertise include:

- Environmental forensics (identifying sources and timing of chemical releases).
- Chemical/isotopic fingerprinting.
- Contaminant transport/fate in sediments, soils, water, groundwater, and air.
- Divisibility and apportionment or allocation of contamination among PRPs.
- Human (i.e., Toxic tort claims and Prop 65) and ecological exposure and risk assessment.
- Assessment of impacts from petroleum (crude oil, diesel, and gasoline), solvents (i.e. PCE, TCE, TCA, 1,4-dioxane), pesticides, PCBs, PAHs, PFAS, radionuclides, and metals.
- Assessment of potential risks posed by emerging contaminants.
- Source water identification, quantity, and quality evaluations.
- Environmental site characterization and remediation.

Dr. Love's expertise has been developed through a unique variety of university, municipal and private party technical consulting work. His capabilities often utilize the use of advanced models and analytic methods to understand and interpret chemical characterization, transport, and fate for a range of potential exposure scenarios. By employing multiple lines of scientific evidence, when available, analyses that couple field measurements, fate and transport calculations, and historical operations/documents provide the bases for opinions and results that are both technically credible and internally consistent.

**CONTACT INFORMATION**
Main: (415) 967-6000
Direct: (415) 967-6023
Email: alove@rouxinc.com
Website: www.rouxinc.com

555 12th Street, Suite 250
Oakland, CA 94607

**EDUCATION**
Post Doctorate, Forensic Science Center, Lawrence Livermore National Laboratory, 2004
PhD, Environmental Engineering, University of California at Berkeley, 2002
MS, Material Science and Mineral Engineering – Hydrogeology, University of California at Berkeley, 1998
BA, Geoscience, Franklin & Marshall College, 1996



## REPRESENTATIVE PROJECTS

### Per- and Polyfluorinated Alkyl Substances (PFAS)

- **Commercial Airport, California.** Perform AFFF site investigation in response to regulatory agency order for groundwater and potential source area soil assessment. Perform historical research to identify airport activities that could have resulted in PFAS releases.

- **Municipality, California.** Review existing site investigation data and advise on strategies for investigation and cleanup of PFAS released from a closed military base related to AFFF usage.

- **Private Developer, California.** Review Phase II site assessment data and advise on costs of further investigation and cleanup of PFAS related to AFFF usage at former fight fighting training location.

- **Chromium-plating facility, California.** Perform site investigation in response to regulatory agency order for groundwater and potential source area soil assessment.

- **Mid-size industrial, New York.** Sampled and evaluated groundwater impacts to determine the source(s), extent, and magnitude of PFAS concentrations in groundwater related to AFFF resulting from historic facility fire.

- **Closed Landfill, New York.** Sampled and evaluated groundwater and leachate impacts in response to NYSDEC order.

- **Small Industrial Facility, New Jersey.** Perform site assessment and remediation of PFAS chemical related to historic 3M operations for completion of property transaction.

- **Small Industrial Facility, New Jersey.** Perform site assessment and remediation of PFAS chemical related to ongoing operations as directed by NJDEP order.

- **Wastewater Treatment Plant, New Jersey.** Evaluate composition and magnitude of PFAS in effluent relative to NJPDES discharge limits. Used data to identify industrial sources discharging PFAS to WWTP.

- **Large Industrial Client, Nationally.** Testifying Expert in PFAS MDL cases as testifying expert.

- **Large Industrial Client, Internationally.** Develop forensic signatures database related to historic inventory of PFAS containing products used internationally. Evaluate the ability of the forensic signatures to provide useful data for determining source, timing, and/or relative contributions to co-mingled groundwater plumes.

### Sediment Contamination Reconstruction

- **Fox River Superfund Site, Wisconsin.** Expert Witness. Prepared an Expert Report evaluating the technical bases for a range of methodologies used to allocate contribution of polychlorinated biphenyls (PCB) to contaminated sediments. Performed fate and transport analyses as the basis for allocation to estimate mass contributions from various PRPs.

- **Kalamazoo River Superfund Site, Michigan.** Evaluated the annual total suspended solid (TSS) discharges from 14 facilities to the Kalamazoo River sediments over the 25+ year relevant period of applicable discharges. Allocated TSS discharges to generator facility when secondary facility was used for wastewater treatment. Evaluated changes in facility TSS treatment efficiency and relative TSS contributions throughout the relevant period.

- **Passaic River (Diamond Alkali) Superfund Site, New Jersey.** Expert Witness. Evaluated available historical data, performed fate and transport analyses, and developed a detailed understanding of the facility operations to support the facility designation of de minimis status.

- **Lower Duwamish Waterway and Harbor Island, Washington.** Evaluated available historical data, performed fate and transport analyses, and developed a detailed understanding of facility operations to support the assessment of the allocation of COC contribution.

- **Gowanus Canal Superfund Site, New York.** Expert Witness. Evaluated available historical data, performed fate and transport analyses, and developed a detailed understanding of facility operations to support the facility designation of de minimis status.

- **San Diego Harbor, California.** Expert Witness. Evaluated available historical data, performed fate and transport analyses, and developed a detailed understanding of facility operations to support an Expert Report that evaluated potential metals, PCBs, and petroleum releases from the Silvergate Power Plant.

- **San Francisco Bay, California.** Collected sediment cores from Naval Air Station Alameda and performed isotopic and chemical analyses that enabled reconstruction of historical sediment contamination.

### Industrial

- **Manufacturing Facilities, California.** Provided litigation support based on fate and transport analysis related to timing of groundwater contamination resulting from multiple potential PCE, TCE, TCA and 1,4-dioxane releases to groundwater managed by Orange County Water District. Additional chemical fingerprinting analysis was performed to distinguish on-site versus off-site contributions of chlorinated solvents and their degradation products to the associated groundwater plumes.



Adam H. Love, PhD | Professional Profile

- **Industrial Facility, Arizona.** Expert Witness. Provided litigation support based on fate and transport analysis related to source and timing of groundwater contamination resulting from potential PCE, TCE, and TCA sources.

- **Former Military Facility, California.** Expert Witness. Evaluated claimed cleanup actions and costs related to site investigation and remediation of a former military site.

- **Former Military Facility, Kansas.** Expert Witness. Evaluated claimed cleanup actions and costs related to site investigation and remediation of a former military site.

- **Aerospace Facility, California.** Expert Witness. Evaluated available historical data, performed fate and transport analyses, and developed a detailed understanding of facility operations that provide the technical basis for assessing contribution of PCE, TCE, and TCA from various operations.

- **Transportation Spill, California.** Expert Witness. Prepared an Expert Report evaluating the potential ecological impact of an ink spill into a local river.

- **Former Military Facility, California.** Performed site investigation of soil and groundwater at a former military site to determine the extent and magnitude of historical solvents and petroleum releases in order to inform remedial strategy. Obtained regulatory closure under low-threat closure criteria.

- **Trichloropropane (1,2,3-TCP), California.** Evaluated potential sources of trichloropropane groundwater contamination in drinking water wells.

**Drycleaners**

- **Pleasanton, California.** Evaluated site conditions and advised on investigation and remediation strategy. Developed conceptual site model. Developed strategy for regulatory interactions.

- **Santa Barbara, California.** Expert Witness. Prepared an Expert Report assessing sources of PCE contamination to soil and groundwater contamination, including drycleaner discharges into sewer system and releases at adjacent sites. Rebuttal Expert Report also assessed the expected remedial costs for PCE contamination at and emanating from the site.

- **San Jose, California.** Expert Witness. Prepared an Expert Declaration regarding the potential sources of PCE contamination to soil and groundwater contamination and the divisibility of the contamination from the potential sources.

- **Napa, California.** Expert Witness. Prepared an Expert Declaration regarding the potential sources of PCE contamination to soil and groundwater contamination.

- **Davis, California.** Expert Witness. Prepared an Expert Report regarding the potential sources of PCE contamination of groundwater.

- **Numerous Sites, Nationally.** Evaluation of the source, timing, and/or contribution from multiple PRPs to comingled PCE plumes from drycleaner sites related to environmental insurance claims.

**Heavy Metals**

- **Battery Recycling Facility, California.** Expert. Evaluated available historical emissions/capacity data, performed fate and transport analyses, and assessed the extent and magnitude of lead and other heavy metals contamination in soils surrounding the Exide Technologies lead battery recycling facility. Worked together with lead regulatory agency to develop interior/exterior assessment and remediation protocols. Analyzed reported results of community blood lead data.

- **Steel Manufacturing Facility, California.** Expert Witness. Evaluated available historical operations, soil lead and arsenic data, and chemical signatures of steel manufacturing from soils within and adjacent to the historic steel manufacturing facility.

- **Facility and Regulatory Assessments of Hexavalent Chromium, California.** Evaluated how changes in regulatory rules and enforcement would impact facilities in Los Angeles County. Created inventory of facilities in LA County that emitted hexavalent chromium. Evaluated alternative technology to using hexavalent chromium for metal plating.

- **GIS Database of Potential Hexavalent Chromium Sources, California.** Using knowledge of industrial processes combined with industrial compliance and reporting documentation, developed a GIS database of potential hexavalent sources for a Southern California county.

- **Naturally-Occurring Hexavalent Chromium in Drinking Water, California.** Expert Witness. Assessed potential industrial sources and naturally occurring sources of hexavalent chromium to a municipal drinking water distribution system.

- **Hexavalent Chromium Air Emissions from a Metal Plating Facility, California.** Expert Witness. Modeled hexavalent chromium emissions from multiple sources of hexavalent chromium in an industrial area, including a metal-plating facility. The model was calibrated and validated using actual air sampling data. Determined the extent and magnitude of emissions target facility and the relative contribution compared to other nearby sources.

- **Metal Recycling Facility, California.** Assessed facility compliance with DTSC hazardous waste regulations. Negotiated with DTSC on behalf of client. Developed plan for



hazardous waste treatment/disposal that meets DTSC requirements.

- **Mixed Industrial Region, Indiana.** Evaluated historical operations, soil lead and arsenic data, and chemical signatures of potential industrial sources with locations on and adjacent to the historic industrial manufacturing facilities.

- **Metal Plating Facility, Indiana.** Expert Witness. Prepared an Expert Report regarding the evaluation of a claimed environmental release and associated costs that occurred during an electrical fire at a metal plating facility.

- **Metal Plating Facility, California.** Expert Witness. Prepared an Expert Declaration regarding the evaluation of the various former site operations that potentially contributed to site contamination.

- **Mineral Processing Facility, California.** Expert Witness. Prepared an Expert Report regarding the contribution of an accidental elemental mercury spill at the Searles Valley Minerals Operations Inc. site to the overall historic site contamination. Analyzed invoices and categorized cleanup costs into emergency spill costs vs. soil remediation activities.

### Petroleum

- **Petroleum Transfer Facility, California.** Expert Witness. Prepared an Expert Report assessing the release of gasoline, diesel fuel, and crude oil over 50+ years into the soil and sediment of Avila Beach, CA. Identified the source and timing of the historical contamination and the nature of the releases using multiple lines of scientific forensic techniques. Performed fate, transport and degradation analysis of gasoline, diesel fuel, and crude oil to determine the divisibility of "sudden and accidental" releases from frequent releases related to facility operations.

- **Pipeline Release, California.** Expert Witness. Performed technical evaluation of historical operations, extent and magnitude of impacts, and fate and transport pathways to develop model for an allocation of contribution among multiple pipeline companies, sewer operator, and oil recycling facility.

- **Pipeline Release, Oklahoma.** Expert Witness. Performed technical evaluation of extent and magnitude of impacts, fate and transport pathways, and bioremediation potential. Documented site cleanup activities were consistent with State of Oklahoma's process for regulatory closure.

- **Retail Gasoline Stations, Colorado.** Expert Witness. Performed fate, transport, and degradation analysis of gasoline to determine the timing of gasoline releases. Prepared an Expert Report regarding the release of gasoline from 80+ fueling facilities throughout the state.

- **Crude Oil Refinery, California.** Expert Witness. Performed evaluation of timing of release and source of contamination related to historical refinery operations.

- **Used Oil System Collection and Recycling, California.** Expert Witness. Developed a report for the State of California on how to improve the state's used oil recycling program. Provided testimony to CA State legislature on proposed used oil recycling incentive bills. Key technical contributor to stakeholder discussion on ongoing CalRecycle efforts for additional used oil recycling improvement.

- **Retail Gasoline Station, Maryland.** Expert Witness. Performed evaluation of timing of release and source of contamination impacting nearby groundwater. Evaluated contaminant contributions from adjacent property and both current and former owner/operator.

- **Underground Fuel Oil Tank, New York.** Expert Witness. Performed evaluation of timing of release and source of contamination for fuel oil impacting groundwater.

- **Long Island Sound, New York.** Expert Witness. Evaluated if the released liquid was an oil, as per Oil Pollution Act of 1990 (OPA 90).

- **Timing of Petroleum Release, Numerous States.** Performed fate, transport and degradation analysis of gasoline and fuel oil to determine the timing of releases at 200+ gasoline station and fuel oil sites related to environmental insurance claims.

### Landfills

- **Groundwater solvent plume, California.** Expert Witness. Evaluated the available operation information, site investigation data, and performed fate and transport analysis to determine the source, timing, and number of release events at landfill operating for over 50 years.

- **Multi-COC Contamination, New Jersey.** Evaluated the available operation information, site investigation data, and performed fate and transport analysis to determine the divisibility of the COC contamination among PRPs.

- **Multi-COC Contamination, Washington.** Evaluated the available operation information, site investigation data, and performed fate and transport analysis to determine the divisibility of the COC contamination among PRPs.

### Radionuclides

- **Radionuclide-containing Products Manufacturing, Pennsylvania.** Expert Witness. Evaluated available historical data, performed fate and transport analyses, and developed a detailed understanding of facility operations at the Safety Light Superfund Site that provided the technical basis for recommendations to DOJ on a feasible strategy for and potential allocation of arranger liability. Site contaminated with



Adam H. Love, PhD | Professional Profile

numerous radionuclides (tritium [H-3], strontium [Sr-90], cesium [Cs-137], and radium [Ra-226]).

- **Release of Radionuclides from Testing Equipment, Oklahoma.** Evaluated whether the response actions taken were reasonable and necessary related to the investigation and remediation of a cesium [Cs-137] release.

- **Radionuclide Labeling Facility, California.** Sampled tree rings in the vicinity of a Lawrence Berkeley National Laboratory stack that emitted tritium [H-3] and analyzed tree rings in order to reconstruct facility emission for >50 years.

## Pesticides

- **Atrazine, Nationally.** Provided expert litigation support regarding the fate and transport of atrazine, timing of release, and potential impacts to drinking water sources.

- **Glyphosate, California.** Expert Witness. Provided deposition and trial testimony regarding the source of glyphosate contamination causing property damage on an adjacent parcel of land based on atmospheric transport, technology dispersal capability, site conditions, and impact patterns on parcel.

- **Chlordane, California.** Site investigation of chlordane impacts. Evaluate potential human health risk and appropriate cleanup remedy. Implement remedy under regulatory supervision.

- **Chlordane, Kansas.** Expert Witness. Opined on the reasonableness and necessity of the proposed cleanup at a BRAC military site.

## Human Exposure and Risk Assessment

- **Roundup MDL, Nationally.** Expert Witness. Evaluated the scientific basis of the claim that exposure to glyphosate and/or formulated product causes non-Hodgkin's lymphoma.

- **Chemical Vapor Exposure, Washington.** Expert Witness. Evaluated the source of chemical vapors and the potential for downwind vapor exposure to workers.

- **School District Astroturf, California.** Collected astroturf samples and conducted consumer product testing to provide data which supported the assessment of potential exposure pathways and human health risk assessment for children, workers, and recreational users.

- **Caustic Liquid Exposure, Michigan.** Expert Witness. Evaluated potential sources of caustic chemical liquids that resulted in worker skin burns.

- **Proposition 65 Phthalates, California.** Collected consumer product samples and conducted consumer product testing to determine potential consumer exposure pathways and magnitude.

- **Proposition 65 Heavy Metals, California.** Evaluated lead data and developed a testing and evaluation plan to determine levels of naturally occurring metals in identified food products.

## Explosive and Fire Assessment

- **Forensic Explosive Evaluation, California.** Expert Witness. Collected field samples and evaluated chemical and operational information to determine the likely cause of an explosion event at an industrial facility.

- **Forensic Deflagration Evaluation, California.** Expert Witness. Evaluated field reports, inventory, and operational information to determine the likely contributing causes of a deflagration event that occurred in a transportation vehicle.

**ADDITIONAL AREAS OF EXPERTISE AND EXPERIENCE**

## Weapons of Mass Destruction Preparation and Response

- Provide technical guidance and operational plan reviews for responding to WMD events. Technical guidance includes emergency response, site characterization, WMD forensics, site remediation, fate and transport, site closure. Co-led team in development of DHS/EPA Federal facility restoration guidance document for critical infrastructure.

## Development of Chemical/Isotopic Signatures/Fingerprints

- Develop and validate new chemical/isotopic fingerprint strategies as well as utilize peer-reviewed techniques. Experienced with numerous approaches: intended chemical markers and additives, chemical component ratios, degradation analysis, isotope analysis, biomarkers, isomers/congener analysis.

## Chemical Fate and Transport Modeling

- Conducts analyses using a variety of industry-accepted approaches, including analytic solutions and numerical models MODFLOW, MT3D, AERMOD; HYDRUS, BIOCHLOR, CAMEO/ALOHA, CALPUFF, HPAC. Determines aqueous and/or atmospheric plume migration exposure duration and magnitude.



**Adam H. Love, PhD | Professional Profile**

## PUBLICATIONS

Shapero, A.; Keck, A.; Love, A.H. (2023) "Background Influence of PM2.5 in Dallas–Fort Worth Area and Recommendations for Source Apportionment" Air. 1(4):258-278.

Shapero, A.; Keck, S.; Goswami, E.; Love, A.H. (2023) Comment on "Impacts of Sugarcane Fires on Air Quality and Public Health in South Florida". Environmental Health Perspectives. 131(2):28001.

Shapero, A.; Keck, S.; Goswami, E.; Love, A.H. (2023) Supplemental Analyses for Comment on "Impacts of Sugarcane Fires on Air Quality and Public Health in South Florida". Preprints. https://www.preprints.org/manuscript/202302.0503/v1

Gihl, C.; Miller, M.; Taylor, M.; Love, A.H. (2023) Charging Ahead: Understanding the Potential Risks and Management Options for Battery Systems. Environmental Claims Journal. 35(1):1-16.

Love, A.H.; Zdon, A.; Fraga, N.; Cohen, B.; Palacios Mejia, M.; Maxwell, R.; Parker, S.S. (2022) Statistical Evaluation of the Similarity of Characteristics in Springs of the California Desert, USA. Frontiers in Environmental Science.

Zdon, A. and Love, A.H. (2020) Groundwater forensics approach for differentiating local and regional springs in arid Eastern California, USA. Environmental Forensics. 22(1-2):302-314.

Boston, C; Love, A.H.; Keck, S. (2022) How the Scientific Community Studies Causation. In Toxic Exposure and Disease: Perspectives from the Scientific, Regulatory and Legal Communities On Causation. The Journal of Science and Law. 10(1), 1-17.

Wespestad, B.; Adams, J.B.; Gerbig, C.; Love, A.H. (2020) Dry Cleaner Releases and Forensic Considerations. Environmental Claims Journal. 33(1): 7-27.

Ram, N.M.; Schneider, M.W.; Gerbig, C.A., Nevins, N.; Love, A.H. (2019) Allocating Cleanup Costs Among Potentially Responsible Parties. Remediation. 30:33-45.

Zdon, A.; Rainville, K.; Buckmaster, N.; Parmenter, S.; Love, A.H. (2019) Identification of Source Water Mixing in the Fish Slough Spring Complex, Mono County, California, USA. Hydrology. 6, 26.

Love, A.H. and Zdon, A. (2018) Use of Radiocarbon Ages to Narrow Groundwater Recharge Estimates in the Southeastern Mojave Desert, USA. Hydrology. 5(3):51.

Boston, C; Love, A.H. (2018) Understanding the Uncertainty with Unregulated Contaminants. American Bar Association. Environmental & Energy Litigation Committee Newsletter. Spring 2018. 2(3):9-16.

Zdon, A.; Davisson, M.L.; Love, A.H. (2018) Understanding the source of water for selected springs within Mojave Trails National Monument, California. Environmental Forensics. 19(2), 99-111.

Baumann, J.; Oliver, D.H.; Dorrance, L.R; Love, A.H. (2018) Approaches to Reduce Conflict when Insuring the Environmental Cleanup of Closed Military Bases Intended for Redevelopment, Environmental Claims Journal. 30(2): 188-199.

Dorrance, L.R.; Kellogg, S.; Love, A.H. (2017) What You Should Know About Per- and Polyfluoroalkyl Substances (PFAS) for Environmental Claims. Environmental Claims Journal, 29(4): 290-304.

Zdon, A.; Davisson, M.L.; Love, A.H. (2015) Testing the Established Hydrogeologic Model of Source Water to the Amargosa River Basin, Inyo and San Bernardino Counties, California. Environmental Forensics. 16(4).

Shelley, T.M.; Love, A.H. (2015) A Question of Proof: Using Isotope Analysis and Chemical Fingerprinting to Identify the Source of Contamination. Environmental Claims Journal, 27(3): 264-275.

Kuo, I-Feng; Grant, C.; Gee, R.; Chinn, S.; Love, A.H. (2012) Determination of the Surface Effects on Sarin Degradation The Journal of Physical Chemistry C. 116 (17), 9631–9635.

Campell, C.G.; Kirvel, R.D.; Love, A.H.; Raber, E. (2012) Decontamination After a Release of B. anthracis Spores. Biosecurity and bioterrorism: biodefense strategy, practice, and science 10(1):108-22.

Love, A.H.; Bailey, C.G.; Hanna, M.L.; Hok, S; Vu, A.K.; Reutter, D.J.; Raber, E. (2011) Efficacy of Liquid and Foam Decontamination Techniques for Chemical Warfare Agents on Indoor Surfaces. J. Hazardous Materials. 196; 115–122.

Watson, A; Hall, L; Raber, E; Hauschild, V.D.; Dolislagerd, F.; Love, A.H.; Hanna, M.L. (2011) Developing Health-Based Pre-Planning Clearance Goals for Airport Remediation Following Chemical Terrorist Attack: Introduction and Key Assessment Considerations. Human and Ecological Risk Assessment: An International Journal, 17(1): 2. 56.

Watson, A; Dolislagerd, F.; Raber, E; Hall, L; Hauschild, V.D.; Love, A.H. (2011) Developing Health-Based Pre-Planning Clearance Goals for Airport Remediation Following a Chemical Terrorist Attack: Decision Criteria for Multipathway Exposure Routes. Human and Ecological Risk Assessment: An International Journal, 17(1): 57. 121.

Campbell C.J., Love A.H. (2008) Monitoring Water Resources for Threats to Water Security. New Topics in Water Resources Research and Management. Henrik M. Andreassen (Ed.). Nova Science Publishers, Inc. pp. 195-235.

Ramkumar, S.; Love, A.H.; Sata, U.R.; Kendall, R.J. (2008) Next-Generation Nonparticulate Dry Nonwoven Pad for Chemical Warfare Agent Decontamination. Ind. Eng. Chem. Res. 47: 9889-9895.

Love, A.H. (2008) Determining Important Parameters Related to Cyanobacterial Alkaloid Toxin Exposure. Advances in Experimental Medicine and Biology. Hudnell, H. Kenneth (Ed.). 619:453-464.



Loui, A., Ratto, T.V., Wilson, T.S., McCall, S.K., Mukerjee, E.V., Love, A.H., Hart, B.R. (2008) Chemical vapor discrimination using a compact and low-power array of piezoresistive microcantilevers. The Analyst. 133(5): 608. 615.

M.R. Johnson, J.G. Reynolds, Love, A.H. (2008) Improving Used Oil Recycling in California. Contractor Report to the California Integrated Waste Management Board. California Environmental Protection Agency. May 2008. Publication #610-08-008.

Love, A.H., M.L. Hanna, P.R. Coronado, J.G. Reynolds (2005) Engineering surface functions groups on silica aerogel for enhanced cleanup of organics from produced water. Separation Science. 40:311-320.

Vogel, J.; Love, A.H. (2005) Quantitating Isotopic Molecular Labels with Accelerator Mass Spectrometry. Methods in Enzymology 402:402-22.

Love, A.H., J.R. Hunt, Vogel, J.S., J.P. Knezovich. (2004) Improving Tritium Exposure Reconstructions Using Accelerator Mass Spectrometry. Analytical and Bioanalytical Chemistry. 379(2): 198-203.

Love, A.H., Vance, A.L., Reynolds, J.G., Davisson, M.L. (2004) Investigating the affinities and persistence of VX nerve agent in environmental matrices. Chemosphere. 57: 1257-1264.

Love, A.H., B.K. Esser, J.R. Hunt. (2003) Reconstructing Contaminant Deposition in a San Francisco Bay Marina. Journal of Environmental Engineering. 129 (7):659.

Love, A.H., J.R. Hunt, J.P. Knezovich. (2003) Use of Carbon-14 and Tritium in Tree Rings to Reconstruct Tritium Exposure at Lawrence Berkeley National Laboratory. Environmental Science and Technology. 37 (19): 4330.

Love, A.H.; J.R Hunt; M.L. Roberts; J.R. Southon, M.L. Chiarappa-Zucca; K.H. Dingley. (2002) Use of Tritium Accelerator Mass Spectrometry for Tree Ring Analysis. Environmental Science & Technology. 36(13):2848-2852.

Chiarappa-Zucca, M.L.; Dingley, K.H.; Roberts, M.L.; Love, A.H. (2002) Sample Preparation for Quantitation of Tritium by Accelerator Mass Spectrometry. Analytical Chemistry 74(24):6285-90.

Roberts, M.L.; Hamm, R.W.; Dingley, K.H.; Love, A.H. (2000) A compact tritium AMS system. Nuclear Instruments and Methods in Physics Research Section B Beam Interactions with Materials and Atoms 172(1-4):262-267.

**PATENTS**

Systems and methods for generation of hydrogen peroxide vapor. United States Patent 08899556

Stabilizing Griess reagent for explosives detection. United States Application 20070065944

**PROFESSIONAL AFFILIATIONS**

Advisory Council – Department of Civil and Environmental Engineering, University of California at Berkeley.

Editorial Board – Journal of Environmental Forensics

International Society of Environmental Forensics

American Chemical Society (ACS), Member #2301067

Organization for the Prohibition of Chemical Weapons US Analysis Team at Lawrence Livermore National Laboratory, 2004-2009



**EXPERT APPEARANCES AND REPORTS**

Short Creek Capital, LLC et al. v. MFA Incorporated. United States District Court for the Western District of Missouri. Case No. 3:22-cv-05021-WBG. Deposition February 16, 2023. Phase I Divisibility Trial Testimony October 2, 2023. Phase II Damages and Allocation Trial Testimony December 11, 2023. Expert Report. Supplemental Report.

Emhart Industries, Inc. v. New England Container Company et al. and Emhart Industries, Inc. v. U.S. Air Force et al. In the District Court of Rhode Island. Case No. 06-218-S Consolidated. Deposition December 6, 2023. Expert Report.

Michele Baker et al. v. Saint-Gobain Performance Plastics Corp, et al. United States District Court, Northern District of New York. Civ No. 1:16-CV-917 (LEK/DJS). Class Certification Phase Deposition Expert Report. November 20, 2020. Liability Phase Deposition November 29, 2023. Supplemental Expert Report.

BTI 2014 LLC v. PricewaterhouseCoopers LLP et al. In the High Court of Justice, Business and Property Courts of England and Wales. Claim No. HC-2014-000954. Expert Report.

Ross Johnson and Fern Johnson v. City of Rapid City, and the Rapid City Landfill. 7th Judicial District, Pennington County, South Dakota No. 51CIV23-000257. Expert Memorandum.

Stephen Gordon v. Aggregate Industries – Northeast Region, Inc. Superior Court. Commonwealth of Massachusetts. Civil Action No. 2181-CV-01432. Deposition July 28, 2023.Expert Report.

In re: Roundup Products Liability Litigation Wave 6 Evaluation of General Causation for non-Hodgkin Lymphoma (NHL). MDL No. 2741. 16-MD-2741-VC. Expert Report.

David R. Hill and Kellie Ann Hull, and Oilfield Disposal Services, LLC, v. JP Energy Marketing LLC and Blueknight Energy Partners, LP. District Court of Love County. State of Oklahoma. Case No. CJ-2017-17. Oklahoma Corporation Commission Hearing Testimony July 21, 2023. Affidavit. Expert Report.

Daniel Anderson v. Monsanto Company, Case No. 22AC-CC00968; Kimmy Draeger and Brenda Draeger v. Monsanto Company, Case No. 22AC-CC00137; Valorie Gunther v. Monsanto Company, Case No. 22AC-CC00965; Marty Hay and Lory Hay v. Monsanto Company, Case No. 22AC-CC00043. Circuit Court of Cole County. State of Missouri. Expert Report.

San Bernardino County v. The Insurance Company of the State of Pennsylvania. United States District Court Central District of California. Case No. 5:21-cv-01978-PSG-JEM. Expert Report. Rebuttal Report. Deposition April 20, 2023.

Weston Solutions, Inc. v. LANXESS Solutions, U.S. American Arbitration Association Arbitration. Case No. 01-19-0004-6183. Arbitration March 7, 2023. Deposition July 5, 2022.

In re: Roundup Products Liability Litigation in re: Wave 5. MDL No. 2741. 16-MD-2741-VC. Expert Report.

Camden County Municipal Utilities Authority v. ResinTech. Notice of Administrative Penalty Assessment, Industrial Discharge Permit No. 2899-CRI-1. Administrative Hearing. Expert Report.

Stratford Holdings, LLC, v. Foot Locker Retail, Inc., et al. United States District Court for the Western District of Oklahoma. Case No. CIV-12-722-HE. Expert Report

City of Sioux Falls v. 3M Company, et al. United States District Court for the District of South Carolina, Charleston Division. Aqueous Film-forming Foams Product Liability Litigation. MDL No. 2:18-mn-2873-RMG. Case No. 2:19-cv-1806-RMG. Deposition September 6, 2022. Expert Report.

City of Stuart v. 3M Company, et al. United States District Court for the District of South Carolina, Charleston Division. Aqueous Film-forming Foams Product Liability Litigation. MDL No. 2:18-mn-2873-RMG. Case No. 2:18-cv-3487-RMG. Deposition September 6, 2022. Expert Report.

Town of Ayer v. 3M Company, et al. United States District Court for the District of South Carolina, Charleston Division. Aqueous Film-forming Foams Product Liability Litigation. MDL No. 2:18-mn-2873-RMG. Case No. 2:19-cv-03120-RMG. Deposition September 6, 2022. Expert Report.

In re: Roundup Products Liability Litigation in re: Wave 4. MDL No. 2741. 16-MD-2741-VC. Expert Report.

The Successor Agency to The Former Emeryville Redevelopment Agency and The City of Emeryville v. Swagelok Company et al. United States District Court for the Northern District of California. Case No. 4:17-CV-00308-SBA. Expert Report. Rebuttal Report.

Portland Harbor Superfund Site Allocation Expert Report. Technical Evaluation of Jones Stevedoring Company Contribution to the Portland Harbor Superfund Cleanup Costs. Position Paper. Response Paper. Final Paper.

Los Angeles Unified School District v. Atlas Iron & Metal Co., Inc. et al. United States District Court for the Central District of California. Case No. 2:20-cv-05330 SB-SK. Deposition February 23, 2022. Expert Report. Rebuttal Report. Expert Declaration. Supplemental Expert Declaration.

Talen Montana, LLC v. PPL Corporation, PPL Capital Funding, Inc., PPL Electric Utilities Corp., PPL Energy Funding Corp., et al. Court of Chancery of the State of Delaware. Case No. 2018-0868-JRS. Deposition February 14, 2022. Expert Report.

California Department of Toxic Substances Control et al. v. NL Industries, et al. United States District Court for the Central District of California. Case No. 2:20-cv-11293-SVW-JPR. Deposition January 28, 2022.

Plaid Pantries, Inc. v. Chevron et al. and 19645 16th Avenue SW, LLC et al. v. Plaid Pantries, Inc et al. and Gull Industries, Inc et al. v. Nikki Heuser as personal representative of the Estate of Richard W. Dyke and Estate of Zeruiah A. (aka "Arlene") Dyke et al.



Adam H. Love, PhD | Professional Profile

Superior Court of Washington for King County. Case No. 16-2-24532-3 SEA. Expert Declaration.

The Honorable Jonathan H. Cannon et al. v. California State Resources Control Board et al. Superior Court of the State of California. County of Orange. Case No. 30-2021-01183513-CU-WM-CJC. Expert Declaration.

Arrowood Indemnity Company v. City of West Sacramento. United States District Court, Eastern District of California. Case No. 2:21-cv-00397 WBS-JDP. Deposition November 3, 2021. Expert Report. Rebuttal Report.

Daniel Jimenez et al. v. Monsanto Company, et al. Superior Court of the State of California for the County of Solano. Case no. FCS056642. Deposition September 15, 2021. Expert Report.

In re: Roundup Products Liability Litigation in re: Wave 3. MDL No. 2741. 16-MD-2741-VC. Expert Report.

Certain Underwriters at Lloyd's, London v. Republic Services, Inc., Allied Services, LLC, and Bridgeton Landfill, LLC. Superior Court of Arizona, Maricopa County. Case No. CV 2017-005489. Deposition June 24, 2021. Expert Report.

Goldberg v. Goss-Jewett Company, Inc., et al., United States District Court, Central District of California. Case No. EDCV14-01872 DSF (AFMx). Trial Testimony May 19, 2021. Deposition May 25, 2016; September 26, 2019; June 18, 2020; July 27, 2020. Expert Report. Rebuttal Report. Additional Rebuttal Report. Rebuttal Declaration. Trail Declaration.

Friends of Riverside Airport, LLC v. Department of the Army et al. United States District Court, Central District of California. Case No. 5:19-CV-01103-MWF-KK. Deposition May 6-7, 2021. Expert Report. Rebuttal Report. Supplemental Report. Expert Declaration.

In re: Roundup Products Liability Litigation. MDL No. 2741. 16-MD-2741-VC. Expert Report.

City of West Sacramento, California, et al. v. R and L Business Management, et al., United States District Court, Eastern District of California. Case No. 2:18-CV-00900-WBS-EFB. Evidentiary Hearing Testimony August 25-26, 2020. Deposition July 24, 2020. Expert Declaration. Rebuttal Declaration. Expert Report. Rebuttal Report.

Lower Passaic River Superfund Site Allocation Technical Submission (ADR Confidential). Expert Report. Evaluation of Potential Copper Contributions from Historic Clark Thread Operations to the Lower Passaic River Superfund Site Sediment.

The Board of Trustees of the Leland Stanford Junior University v. Agilent Technologies, Inc., and HP Inc. United States District Court, Northern District of California, San Francisco Division. Case No. 3:18-CV-01199 VC. Deposition February 4, 2020. Expert Report. Rebuttal Report. Expert Declarations.

Von Duprin LLC v. Moran Electric Service, Inc. Major Holdings, LLC, Major Tool and Machine, Inc., and Zimmer Paper Products

Incorporated. United States District Court Southern District of Indiana, Indianapolis Division. Case No. 1:16-CV-01942-TWP-DML. Trial July 31, 2019. Deposition June 7, 2018. Expert Report. Expert Declaration.

King County, Washington v. Traveler's Indemnity Co., et al. United States District Court. Western District of Washington. Case No. 14-cv-1957. Deposition April 9, 2019. Rebuttal Report.

Chemtronics Inc. v. Northrop Grumman Systems Corp. American Arbitration Association Arbitration. Case No. 01-17-0007-1884. Binding Arbitration November 12-13, 2018. Expert Report. Rebuttal Report. Supplemental Report.

California River Watch v. City of Vacaville. United States District Court, Eastern District of California. Case No. 2:17-cv-00524-KJM-KJN. Expert Report. Expert Declaration.

220 W. Gutierrez, LLC v. Goss-Jewett & Co. Inc. et al. Santa Barbara County Superior Court. Case No. 17-CV-05689. Expert Declaration.

Estate of Robert Renzel, deceased et al. v. estate of Lupe Ventura, Deceased, et al. United States District Court, Northern District of California. Case No. 4:15-cv-1648-HSG. Deposition August 27, 2018. Expert Declaration. Expert Report. Rebuttal Report.

Power Authority of the State of New York v. The tug M/V Ellen S. Bouchard, et al. United States District Court, Southern District of New York. Case No. 14-cv-4462 (PAC). Deposition May 30, 2018. Expert Report.

Siltronic Corporation v. Employers Insurance Company of Wausau et al. United States District Court, Central District of Oregon. Case No. 3:11-cv-01493-BR. Deposition May 24, 2018. Expert Report.

Arrow Electronics, Inc. v. Aetna Casualty & Surety Co., et al. United States District Court, Central District of California. Case No. 2:17-cv-05247-JFW-JEM. Expert Report. Rebuttal Report.

Crown Central, LLC v. Petroleum Marketing Investment Group, LLC, et al. Circuit Court for Baltimore County, Maryland. Case No. 03-C-16-010774 CN. Deposition December 19, 2017. Expert Declaration. Rebuttal Declaration.

Sunflower Redevelopment, LLC v. Illinois Union Insurance Company. United States District Court, Western District of Missouri, Western Division. Case No. 4:15-cv-00577-DGK. Deposition November 10, 2017. Rebuttal Report. Supplemental Report.

Gary Puhr v. PQ Corporation. United States District Court, Northern District of Illinois, Eastern Division. Case No. 16-CV-00728. Expert Report.

Insurance Company of the State of Pennsylvania v. County of San Bernardino. United States District Court, Central District of California. Case No. 5:16-cv-00128-PSG-SS. Deposition June 15, 2017. Expert Report. Rebuttal Report.

Lennar Mare Island, LLC v. Steadfast Insurance Company. United States District Court, Eastern District of California, Sacramento Division. Case No. 2:12-cv-02182-KJM-KJN. Case No.2:16-cv-



00291-KJM-CKD860. Deposition May 26, 2017. Expert Report. Supplemental Report.

Hanford Challenge, et al., v. Ernest Moniz, et al. United States District Court, Eastern District of Washington. Case No. 4:15-CV-05086-TOR. Expert Declaration. Supplemental Expert Declaration.

K.C. Jones Plating Company, et al., v. Admiral Insurance Company. United States District Court, Eastern District of Michigan, Southern Division. Case No. 2:16-cv-10790-DML-MKM. Expert Report.

860 Kaiser, LLC v. Greene's Cleaners, Inc., Napa County Superior Court. Case No: 26-63995. Deposition January 11, 2016, September 12, 2016. September 26, 2016. Expert Declaration.

State of Colorado, et al., v. Valero Energy Corporation, et al., District Court, City and County of Denver, Colorado. Expert Report. Rebuttal Report.

Union Oil Consolidated Coverage Cases, Los Angeles Superior Court. Case No: BC 271474. Deposition November 20, 2014. Expert Report.

Lewis v. Russell, United States District Court, Eastern District of California. Case No. CIV. S-03-02646 WBS AC. Deposition July 20, 2016. Expert Report. Rebuttal Report. Supplemental Report.

937 York Road, LLC, et al. v. Petroleum Marketing Group, Inc., et al., Circuit Court for Baltimore County, Maryland. Case No. 03-C-14-005988. Expert Declaration.

Donegan v. Stubblefield, Rene C. Davidson Alameda County Courthouse. RG12628426. Deposition July 26, 2013. Trial August 8, 2013.

Searles Valley Minerals Operations Inc. v. Advanced Steel Recovery Inc., et al., California Ninth District. Central District Court. 5:2010cv01403. Deposition January 25, 2012. Expert Report. Rebuttal Report.

# Exhibit B

Materials Considered List

1. Declaration of Steven J. Luis, C.E., P.E. Compendium of Evidence in Support of Plaintiffs' Motion for Summary Adjudication. Volume I of III. Superior Court of the State of California, County of Los Angeles, Central District. June 5, 2024.

2. Essentia Management Services, LLC. DRAFT Preliminary Endangerment Assessment Work Plan, Charo Property at the Corner of Hatfieldd Place and Indiana Avenue, 4301 Valley Boulevard, Loos Angeles, California 90032. February 8, 2007.

3. Essentia Management Services, LLC. Final Preliminary Endangerment Assessment. Charo Property at the Corner of Hatfieldd Place and Indiana Avenue, 4301 Valley Boulevard, Loos Angeles, California 90032. June 2007.

4. Jack Orwell and Associates. Phase I Environmental Assessment Report. Nardon Manufacturing Company, 1919 Vineburn Avenue, Los Angeles, California 90032. August 25, 1992.

5. EMG. Phase I Environmental Assessment of Industrial Building, 1919 Vineburn Avenue, Los Angeles, California 90032. August 11, 1998.

6. EMG. Phase II Environmental Assessment of Industrial Building, 1919 Vineburn Avenue, Los Angeles, California 90032. September 29, 1998.

7. SCS Engineers. Soil Gas Survey Report, Outdoor Products Facility, 1919 Vineburn Avenue, Los Angeles, California. March 29, 1999.

8. Ami Adini & Associates, Inc. Phase I Environmental Site Assessment Report. Assessor Parcel Numbers 5215-014-005 and 006, 1919 Vineburn Avenue, Los Angeles, California 90032. May 14, 2004.

9. Ami Adini & Associates, Inc. Phase I Environmental Site Assessment Report. Assessor Parcel Numbers 5215-014-005 and 006, 1919 Vineburn Avenue, Los Angeles, California 90032. August 1, 2004.

10. Ami Adini & Associates, Inc. Limited Soil & Groundwater Investigation Report. Assessor Parcel Numbers 5215-014-005 and 006, 1919 Vineburn Avenue, Los Angeles, California 90032. August 30, 2004.

11. Ami Adini & Associates, Inc. Limited Subsurface Soil Investigation Report. 1919 Vineburn Avenue, Los Angeles, California. September 28, 2004.

12. Smith-Emery GeoServices. Review of Environmental Documentation, 1919 Vineburn Avenue, Los Angeles, California. March 23, 2005.

13. Hazard Management Consulting. Results of Phase II Investigations, 1919 Vineburn Avenue, Los Angeles, California. January 3, 2013.

14. County of Los Angeles Fire Department. EVOQ Property, 1919 Vineburn Avenue, Los Angeles, California 90032 (SMU File# 13-895/RO0001518).

15. Hazard Management Consulting. Second Quarterly Groundwater Monitoring Report, 1919 Vineburn Avenue, Los Angeles, California, SMU File# 13-895/RO0001518. July 12, 2013.

16. Hazard Management Consulting. Groundwater Monitoring Well Destruction Report, 1919 Vineburn Avenue, Los Angeles, California. September 17, 2013.

17. County of Los Angeles Fire Department. Closure Report. EVOQ Property, 1919 Vineburn Ave. Los Angeles, CA 90032. September 24, 2013.

18. County of Los Angeles Fire Department. EVOQ Property, 1919 Vineburn Avenue, Los Angeles, California 90032 (SMU File# 13-895/RO0001518). September 24, 2013.

19. Los Angeles Regional Water Quality Control Board. Requirement for Response to Chemical Storage and Use Questionnaire Pursuant to California Water Code Section 13267. Former Nardon Manufacturing Corporation Facility, 1919 Vineburn Avenue, Los Angeles, California 90032-3704. November 15, 2016.

20. HPC Vineburn, LLC. 1919 Vineburn Avenue, Los Angeles, California 90032-3704, Assessor's Identification Number 5215-014-005, SCP Number 1390, Response to Notice of Violation and Submittal of Chemical Storage and Use Questionnaire. July 20, 2017.

21. Los Angeles Regional Water Quality Control Board. Requirement for Technical Report Pursuant to California Water Code Section 13267 Order No. R4-2018-0150. Former Nardon Manufacturing Corporation Facility, 1919 Vineburn Avenue, Los Angeles, California 90032-3704. November 19, 2018.

22. Hazard Management Consulting. Subsurface Investigation Report and Human Health Risk Evaluation, Former Nardon Manufacturing Corporation Facility, 1919 Vineburn Avenue, Los Angeles, California. May 7, 2020.

23. California Environmental Protection Agency Office of Environmental Health Hazard Assessment. Review of Soil Vapor Data and Human Health Risk Evaluation, Former Nardon Manufacturing Corporation Facility, 1919 Vineburn Avenue, Los Angeles, California. April 12, 2021.

24. Los Angeles Regional Water Quality Control Board. Evaluation of Human Health Risk Assessment Report and Requirement to Submit an Indoor Air Sampling Plan Pursuant to California Water Code Section 13267 Order No. R4-2018-0150. Former Nardon Manufacturing Corporation Facility, 1919 Vineburn Avenue, Los Angeles, California 90032-3704.  June 28, 2021.

25. Hazard Management Consulting. Results of Indoor Air Sampling, Winter 2022. Former Nardon Manufacturing Corporation Facility, 1919 Vineburn Avenue, Los Angeles, California. April 11, 2022.

26. Hazard Management Consulting. Results of Indoor Air Sampling, Summer 2022. Former Nardon Manufacturing Corporation Facility, 1919 Vineburn Avenue, Los Angeles, California. October 14, 2022.

27. California Environmental Protection Agency Office of Environmental Health Hazard Assessment. Review of Results of Indoor Air Sampling During Winter and Summer 2022. Former Nardon Manufacturing Corporation Facility, 1919 Vineburn Avenue, Los Angeles, California. June 26, 2023.

28. Los Angeles Regional Water Quality Control Board. Requirement to Submit a Work Plan for Additional Assessment Pursuant to California Water Code Section 13267 Order No. R4-2018-0150. Former Nardon Manufacturing Corporation Facility, 1919 Vineburn Avenue, Los Angeles, California 90032-3704.

29. Smith-Emery Company. Phase I Environmental Assessment. Alba Industries, 4335 Valley Boulevard, Los Angeles, California. January 14, 1993.

30. Smith-Emery Company. Phase II Environmental Assessment. Alba Industries Facility, 4335 Valley Boulevard, Los Angeles, California. April 19, 1993.

31. JDR Environmental, Inc. Field Testing Report. Alba Industries, Inc. 4335 Valley Boulevard, Los Angeles, California. July 25, 1997.

32. EMCON. Site Assessment Report for the Facility Located at 4335 Valley Boulevard, Los Angeles, California. February 17, 1999.

33. Los Angeles Regional Water Quality Control Board. Cleanup and Abatement Order No. 2001-102 for the Former Square D Company Site, 4335 Valley Boulevard, Los Angeles, California. December 5, 2001.

34. Arcadis. Remedial Action Workplan. Former Square D Facility, 4335 Valley Boulevard, Los Angeles, California. February 27, 2002.

35. Arcadis. Supplemental Investigation Report. Former Square D Facility, 4335 Valley Boulevard, Los Angeles, California. August 12, 2010.

36. Arcadis. Data Gap Evaluation for Former Square D Facility, 4335 Valley Boulevard, Los Angeles, California. January 26, 2011.

37. Arcadis. Results of 1,4-Dioxane Sampling, Former Square D Facility, 4335 Valley Boulevard, Los Angeles, California. May 23, 2011.

38. Geosyntec. Supplemental Subsurface Site Assessment Report. Former Square D Facility, 4335 Valley Boulevard, Los Angeles, California. November 2017.

39. California Environmental Protection Agency Office of Environmental Health Hazard Assessment. Review of Human Health Risk Assessment Based on Downgradient Soil Vapor Sampling at Former Square D Facility, 4335 Valley Boulevard, Los Angeles, California. February 13, 2019.

40. Geosyntec. Supplemental EISB Injection Completion Report, Downgradient USC Parking Lot Property (4121 Valley Boulevard) Former Square D Facility, 4335 Valley Boulevard, Los Angeles, California. February 1, 2021.

41. Geosyntec. Off-Site soil Vapor Investigation Report. Former Square D Facility, 4335 Valley Boulevard, Los Angeles, California. February 26, 2021.

42. Geosyntec. On-Site Indoor Air Sampling Summary Report. Former Square D Facility, 4335 Valley Boulevard, Los Angeles, California. June 4, 2021.

43. Geosyntec. Remedial Action Completion Report. Former Square D Facility, 4335 Valley Boulevard, Los Angeles, California. March 2023.

44. California Environmental Protection Agency Office of Environmental Health Hazard Assessment. Off-Site Soil Vapor Investigation Report. Former Square D Facility, 4335 Valley Boulevard, Los Angeles, California. April 24, 2023.

45. Elkins Kalt. Contamination Originating at Former Nardon Manufacturing Corporation Facility-1919 Vineburn Avenue, Los Angeles, CA 90032. June 8, 2023.

46. Public Record Act Responses from Department of Toxic Substances Control Headquarters. Received August 11, 2023.

47. Public Record Act Responses from Los Angeles Sanitation & Environment. Received August 18, 2023.

48. Public Record Act Responses from South Coast Air Quality Management District. Received August 10, 2023.

49. Mohr, T.K.G. Solvent Stabilizers. June 14, 2001. Santa Clara Valley Water District. SFUND Records CTR 2129332.

50. Material Safety Data Sheet. 1,1,1-Trichloroethane. ACC#14370. Revision #5. March 16, 2007.

51. EPA. Solvents Study. August 1996. EPA530-R-017.

# Exhibit C



**MAX 1,4-DIOXANE GROUNDWATER ISOCONCENTRATION MAP**

4335 VALLEY BOULEVARD
LOS ANGELES, CALIFORNIA

LEGEND

| | SITE (NARDON) BOUNDARY | | 1,4-DIOXANE ISOCONTOUR (100 UG/L) |
| | SQUARE D BOUNDARY | | 1,4-DIOXANE ISOCONTOUR (200 UG/L) |
| | CHARO BOUNDARY | | 1,4-DIOXANE ISOCONTOUR (500 UG/L) |
| | MONITORING WELL (GEOSYNTEC, 2023) | | |
| | GROUNDWATER SAMPLE LOCATION (HMC, 2020) | | |
| | 1,4-DIOXANE ISOCONCENTRATION CONTOUR (10 UG/L) | | |

NOTES
1. 1,4-DIOXANE CONCENTRATIONS IN UG/L
2. CONTOURS DASHED WHERE INFERRED
3. MONITORING WELL DATA IS HIGHEST CONCENTRATION MEASURED (2003–2015: ARCADIS, 2015–PRESENT: GEOSYNTEC)
4. GROUNDWATER SAMPLE DATA FROM HMC SUBSURFACE INVESTIGATION REPORT AND HHRE DATED MAY 7, 2020

Compiled by: TC    Date: 11 AUG 2023
Prepared by: TC    Scale: AS SHOWN
Project Mgr: ANM    Project: 2561.0010S
File: 002_2561.0010S - MAX DIOXANE IN GW.DWG

EXHIBIT C

# Exhibit D

## SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT

# PERMIT to OPERATE

M 43795

### 9150 FLAIR DRIVE, EL MONTE, CALIFORNIA 91731

Operation under this permit must be conducted in compliance with all information included with the initial application and the initial permit conditions. The equipment must be properly maintained and kept in good operating condition at all times. In accordance with Rule 206, this Permit to Operate or copy must be posted on or within 8 meters of equipment.

LEGAL OWNER
OR OPERATOR:     ALBA INDUSTRIAL INC.                    APPL. NO. 129457
                4301 VALLEY BLVD.
EQUIPMENT       LOS ANGELES, CALIFORNIA
LOCATED AT:

EQUIPMENT DESCRIPTION AND CONDITIONS:

OPEN SPRAY EQUIPMENT, DEVILBISS, WITH ONE BINKS GLUE SPRAY GUN AND ONE 2-1/2 GALLON MATERIALS
RESERVOIR.

-CONDITION-

THIS SPRAY EQUIPMENT MUST BE USED ONLY TO APPLY ADHESIVES COMPOUNDED WITH 1,1,1-TRICHLOROETHANE
AND/OR METHYLENE CHLORIDE.

FILE COPY

This initial permit must be renewed by     07/01 ANNUALLY     unless the equipment is moved, or changes ownership. If billing for annual renewal fee
(Rule 301.f) not received by expiration date, contact office above.

This permit does not authorize the emission of air contaminants in excess of those allowed by
Division 26 of the Health and Safety Code of the State of California or the Rules of the Air
Quality Management District. This permit cannot be considered as permission to violate existing
laws, ordinances, regulations or statutes of other government agencies.

J. A. STUART
EXECUTIVE OFFICER

XXXXXXXXXX

BY     VIRGINIA MOY

DATE   05/08/85

# SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT
## 9150 Flair Drive El Monte, CA 91731

APPLICATION FOR PERMIT TO CONSTRUCT AND PERMIT TO OPERATE AND EXCAVATE
FOR FEE INFORMATION AND SMALL BUSINESS EXEMPTION
SEE REVERSE SIDE

PLEASE TYPE OR PRINT

| | SCAQMD USE | | |
|---|---|---|---|
| | WE | | 15576 |
| | SEC | TS | ID NUMBER |

**1A. PERMIT TO BE ISSUED TO:** Alba Industries Inc
BUSINESS LICENSE NAME OF ORGANIZATION THAT IS TO RECEIVE PERMIT

**1 B.** Ray Alba
NAME (OR NAMES) OF OWNER OR PRINCIPAL PARTNERS DOING BUSINESS AS (DBA) ABOVE ORGANIZATION

**2 A. MAILING ADDRESS:** 4301 Valley Blvd.   Los Angeles CA.   **2 B.** 90032
NUMBER   STREET   CITY OR COMMUNITY   STATE   ZIP CODE

**3 A. EQUIPMENT LOCATION (IF SAME ENTER "SAME"):** SAME   **3 B.** Soto
NUMBER   STREET   CITY OR COMMUNITY   ZIP   NEAREST INTERSECTING STREET

**4 A. CONTACT PERSON (INITIALS & NAME):** R.G. Alba   **4 B. CONTACT PHONE NO. (AREA & NO.):** (213) 225-4181

**5. EQUIPMENT:** APPLICATION IS HEREBY MADE FOR PERMIT TO OPERATE THE FOLLOWING EQUIPMENT:
De Vilbess Pressurized & glue spray gun with 3 1/2 gal pot

**6** IF THIS EQUIPMENT HAD A PREVIOUS WRITTEN PERMIT, STATE NAME OF CORPORATION, COMPANY, OR INDIVIDUAL OWNER THAT OPERATED THIS EQUIPMENT, AND STATE PREVIOUS AIR POLLUTION CONTROL DISTRICT PERMIT NUMBER
NONE
NAME   PREVIOUS PERMIT NUMBER

**7. PERMIT APPLICATION FOR EQUIPMENT:**
- NEW CONSTRUCTION ☐
- ALTERATION ☐
- CHANGE OF LOCATION ☐
- REINSTATE NON—PAYMENT P/O FEES DUE ☐
- CHANGE OF OWNERSHIP ☐
- EXISTING EQUIPMENT IN OPERATION WITHOUT PRIOR PERMIT ☒
- CHANGE OF CONDITIONS ☐

**8. TYPE OF ORGANIZATION:**
- CORPORATION ☒
- PARTNERSHIP ☐
- INDIVIDUAL OWNER ☐
- LOCAL GOV'T AGENCY ☐
- STATE AGENCY ☐
- FEDERAL AGENCY ☐
- UTILITY ☐

**9. ESTIMATED COST OF EQUIPMENT OR ALTERATION:**
BASIC EQUIPMENT $ 500.00   AIR POLLUTION CONTROL EQUIPMENT $ 100.00

**10. FOR THE NEW CONSTRUCTION, ALTERATION, TRANSFER OF OWNERSHIP OR LOCATION, WHAT IS**
ESTIMATED STARTING DATE? present   ESTIMATED COMPLETION DATE? present

**11. GENERAL NATURE OF BUSINESS:** Office Furniture Manf.   **12. PRINCIPLE PRODUCT:** Desks & chairs

**13. DO YOU CLAIM CONFIDENTIALITY OF DATA?**
YES ☐   NO ☒
IF YES STATE NATURE OF DATA ON SEPARATE SHEET

**14. NORMAL OPERATING HOURS OF SUBJECT EQUIPMENT:**
HOURS/DAY 8
DAYS/WEEK 5
WEEKS/YEAR 52

**15. HAS A CEQA DOCUMENT BEEN PREPARED FOR THIS PROJECT?** YES ☒   NO ☒
**15a.** ARE ALL COMPANEIS FACILITIES IN CALIFORNIA IN COMPLIANCE WITH AIR POLLUTION RULES?
YES ☐   NO ☐

**16. SIGNATURE OF RESPONSIBLE MEMBER OF ORGANIZATION:**

**17. OFFICIAL TITLE OF SIGNER:** Secretary - Treasurer

**18. TYPED OR PRINTED NAME OF SIGNER:** R.G. Alba.   **19. PHONE NO.** 225-4181   **20. DATE** 1/29/85

| SIC NO. 2521 | EQUIP. CAT NO. 000202 | SCH/STEP 3A | FEB 15 1985 | | |
|---|---|---|---|---|---|
| APPLICATION NO. 129457 | PERMIT NO. | TYPE (B or C) | WORK UNITS A/C   P/O | ASSIGNMENTS 6 UNIT   ENGR. | CLASSS I   (III) |
| VALIDATION February 4, 85 | | FILING FEE $ 350 | CHECK OR MONEY ORDER NO. 9638 mo | | |

Form 400A - REVISED 4-84   PRIOR VERSIONS NOT VALID   (Continued on reverse)   C-1
SEE REVERSE FOR FEES REQUIRED UPON FILING

# SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT
## FILING FEES

Except as noted following, a $250 filing fee must accompany each application for Permit to Construct/Operate.

1.  For small businesses the filing fee is $160. The small business declaration form below must be completed in order to be considered a small business.

2.  Each application for change of ownership requires a $110 transfer fee.

3.  All state, local governmental agencies or public districts are exempt from paying filing fees and change of ownership fees.


### SEE APPLICATION INSTRUCTIONS FORM 400-B FOR ADDITIONAL INSTRUCTIONS
### Call (213) 572-6212 for assistance
### SUPPLEMENTAL DATA FORMS REQUIRED

Special supplemental data forms must be completed for: BOILERS, LIQUID HEATERS, DEGREASERS, DRY CLEANING EQUIPMENT, OVENS, SPRAY BOOTHS AND STORAGE TANKS.


### SMALL BUSINESS DECLARATION

In order to be considered a small business as specified in Regulation XIII, this form must be completed. If not a small business, do not complete this form.

A "Small Business": is a business which is independently owned and operated and meets the following criteria or, if affiliated with another concern, the combined abilities of both concerns meet these criteria:

The number of employees is 10 or less; and
The total annual receipts are $500,000 or less.

I hereby certify, under penalty of perjury, that the business enterprise containing the emission source(s) for which an SCAQMD Permit to Construct or Permit to Operate is being applied herein qualifies as a SMALL BUSINESS, based on compliance with the definition above:

_____          _____     _____
Signature of Applicant                 Date                Telephone Number

R G ALBA                                Alba Industries Inc
Printed or Typed Signature                    Company Name

NAME OF FIRM  AL Bernard Company E Hedgpeth, Page 38  COMPANY I.D. 1 5 5 2 6

LOCATION ADDRESS  4301 VALLEY  BL  Las Angeles

REASON FOR       1. ALTERATION  2. CHANGE OF OPERATOR   3. MOVED  4. REMOVED
INACTIVATION:    5. OUT OF BUSINESS  6. BANKING ISSUED  7. OTHER _____

SUBS. APPLICATION NO. _ _ _ _ _ _          INACTIVATION DATE _ _/_ _/_ _

ACTION CODE (A) C D     A = ADD DATA    C = CHANGE DATA    D = DELETE DATA

*PERMIT NUMBER M 4 3 7 9 5
APPLICATION NUMBER 1 2 9 4 5 2 _ 120398
*ISSUE DATE 05/ 08/ 85
**INSTALLATION DATE _ _/_ _/_ _
**EQUIPMENT B CAT. 0 2 4 0 0 0
**EQUIPMENT C CAT. _ _
**DESCRIPTION O P E N _ S P R A Y _ E Q U I P M E N T _ _ _ _ _
PERMIT TYPE (B) C, or D) B
SCHEDULE/STEP 7/ A

*SECTION _ _

*SECTOR _ _

EMISSIONS          R₁        R₂

| | R1 | R2 |
|---|---|---|
| rHC | 120 | 120 |
| tHC | 121 | 121 |
| NOx | _ _ | _ _ |
| SO2 | _ _ | _ _ |
| CO | _ _ | _ _ |
| Part | _ _ | _ _ |
| Other 1 _ _ _ | _ _ | _ _ |
| Other 2 _ _ _ | _ _ | _ _ |
| Other 3 _ _ _ | _ _ | _ _ |

| Weeks Operated | Mon | Tues | Weds | Thurs | Fri | Sat | Sun |
|---|---|---|---|---|---|---|---|
| Per Year 5 2  Daily Start Time | 8 | 8 | 8 | 8 | 8 | _ _ | _ _ |
| Daily Stop Time | 16 | 16 | 16 | 16 | 16 | _ _ | _ _ |
| *UTM Coordinates X | _ _ | _ _ | _ _ | _ _ | _ _ | _ _ | _ _ |

*Not to be completed by the engineer.
**Fill out only if different from application.     Engineer _____ S Dolini     Date 4/1/85

# CONDITIONS FOR PERMIT WORDING & FEE DATA

**APPLICATION NO.** _____ _____

**NEED EIR?** ☐ YES ☒ NO

**DISPOSITION:**
☒ APPROVED
☐ DENIED
☐ CANCELED — DON'T REFUND FILING FEE
☐ CANCELED — REFUND FILING FEE
   SEE COMMENTS

**PERMIT UNIT WORDING:**
☐ BELOW
☐ ON FIELD REPORT DATED _____
☒ ON PAGE ___1___ OF PROCESS SHEETS
☐ ON _____

**CONDITIONS:**
☐ NONE
☐ NUMBERS LISTED _____
☒ SPECIAL (SEE PERMIT UNIT WORDING & CONDITIONS)
☐ AS ON _____

**PREVIOUS PERMIT NO.** _____

**PERMIT UNIT WORDING & CONDITIONS:**

THIS SPRAY EQUIPMENT MUST BE USED ONLY TO
APPLY ADHESIVES COMPOUNDED WITH _____
SOLVENTS ONLY. 1 - TRICHLOROETHANE
AND/OR METHYLENE CHLORIDE.

( ) P/C        ( ) P/O        (X) P/O NO P/C        (X) **NOTICE TO APPLY WRITTEN**

☐ CHANGE OF OWNERSHIP, large business        ☐ ALTERATION        ☐ TIME & MATERIALS
☐ CHANGE OF OWNERSHIP, small business        ☐ FEDERAL GOVERNMENT
☐ CHANGE OF CONDITIONS        ☐ GOVERNMENT (other)

| SCHEDULE | ① H.P. | ② 1000s BTU | ③ KVA | ④ SQ. FT. | ⑤ GALLONS | ⑥ GASOLINE FUELING | ⑦ EXCEPTIONS |
|---|---|---|---|---|---|---|---|
| RATING |  |  |  |  |  |  | 1 |
| FEE |  |  |  |  |  |  | 31 |

1. **PERMIT EVALUATION FEE — RULE 301.1(b)(1)**

   A. SCHEDULE __7__ STEP __A__        = FEE $ 31

   B. TIME & MATERIALS (T & M): HOURS _____ X $50/HOUR        = FEE $ _____

   C. CHANGE OF OWNERSHIP, large business or ALTERATION — EXCEPT T & M:

      SCHEDULE _____ STEP _____ = FEE _____ X 50%        = FEE $ _____

   D. ADDITIONAL FEE FOR NO P/C: ABOVE FEE _____ X 50%        = FEE $ _____

2. EIR/MODELING FEE — RULE 301.1(g): HOURS _____ X $50/HOUR        = FEE $ _____

3. 301(d)(1)(C) CREDIT OR DIFFERENCE DUE TO INCORRECT INFORMATION

      ADJUSTED        FEE $ _____

**COMMENTS:** APP.

**TOTAL FEE** 31

**REFUND** _____

**WORK UNITS (** 3 **)**

**RECOMMENDED BY** DOBKIN        **DATE** 4/1/85        **REVIEWING ENGINEER** _____ **DATE** AUG 5 1985

**PAGE** __1__ **OF** __6__ **PAGES**



## South Coast
# AIR QUALITY MANAGEMENT DISTRICT

**9150 FLAIR DRIVE, EL MONTE, CA 91731    (213) 572-6200**

**MAILING ADDRESS:**

ALBA INDUSTRIAL INC.
4301 VALLEY BLVD.
LOS ANGELES, CA  90032

**DATE:**    05/08/85

ATTN: R. G. ALBA

**EQUIPMENT
LOCATION:**    (SAME AS ABOVE)

| PERMIT NO(S) | APPL. NO(S) |
|---|---|
| M43795 | 129457 |
| M43796 | 130398 |

WYC

**TRANSMITTED HEREWITH ARE THE PERMIT(S) LISTED ABOVE, AUTHORIZING YOU TO OPERATE THE DESCRIBED EQUIPMENT IN COMPLIANCE WITH RULE 206. (BILLING WHERE APPLICABLE WILL FOLLOW.)**

**RULE 206.** A person granted a permit under Rule 203 shall not operate or use any equipment unless the entire permit to operate or a legible facsimile of the entire permit is affixed upon the equipment in such a manner that the permit number, equipment description, and the specified operating conditions are clearly visible and accessible. In the event that the equipment is so constructed that the permit to operate or the legible facsimile cannot be so placed, the entire permit shall be mounted so as to be clearly visible in an accessible place within 8 meters (26 FEET) of the equipment or as otherwise approved by the Executive Officer.

Time and Materials Charges
Summary Application Sheet

T & M Charges Apply
Yes [ ]    No [ ]

P/O [ ]
P/O [ ]

APPL # ~~136398~~ 129457
I.D. # 015576

ALBA IND
4301 VALLEY BL
LOS ANGELES

Contact: _____ALBA_____    Previous Permit No.: _____

Application: _____    3  18  85
                                        2  20  85
Engineer's Initials___SD___    Date Assigned

Date Application Deemed Complete................... ___/___/___

Verify Date Estimated for Completion of Construction ___/___/___

Estimated Date to Completion of Evaluation.......... 4/5/9

Estimated Hours to Completion _____3_____

| EVALUATION | DATE COMPLETED | TOTAL HOURS* | COMMENTS |
|---|---|---|---|
| A/I | ___/___/___ | | |
| FIELD EVALUATION | ___/___/___ | | |
| SOURCE TEST | ___/___/___ | | |
| ENG. EVAL. | 4/1/85 | 1 | APP |

Engineer ___ _DOBRIH_____    DATE: 4/1/85

Reviewing and Processing:

Supervisory Review and Approvals Completed : _____    APR 5 1985

Permit Typing Completed and Permit Mailed : _____    ___/___/___

* List Total Hours Spent for Each Category of Work
           Over For Example on Back
   NTM 11-27-84

SCAQMD
**ENGINEERING DIVISION**
**NEW SOURCE REVIEW REGULATION XIII DATA SHEET**

1 ☐ P/C    2 ☑ P/O    3 ☐ C/O

COMPANY ID# _15526_
APPLICATION # _129452_

COMPANY NAME _ALBA INDUSTRIES_    DATE _3-29-85_

EQUIPMENT LOCATION _1301 VALLEY·    LA_

==========================================================================
APPLICABLE NEW SOURCE RULE: (equipmt. installed or Class I applc'n rec'd...)
    1 ☐ None (before 10-8-76)
    2 ☐ Rule 213 (before 7-1-79 and on or after 10-8-76)
    3 ☐ Original Reg. XIII (before 1-1-83 and on or after 7-1-79)
    4 ☑ Revised Reg. XIII (on or after 1-1-83)
==========================================================================
SPECIAL CASES:                          5 ☑ Toxic Materials
    1 ☐ Banking Ref Applc'n #_____   6 ☐ Banking Cert./Reg. Used
    2 ☐ Reg 13 Exempt                  7 ☐ Rule 219 Exemptions
    3 ☐ Mitigations    4 ☐ Tradeoffs   8 ☐ Alter.-Prev. App. #_____
==========================================================================
EMISSION INCREASE OR DECREASE FROM THIS PERMIT UNIT CREDITED TO THIS
  LOCATION (Indicate "+" or "-"):    ☑ 1.1 factor used for Max

| CONTAMINANT | RHC | NO$_x$ | SO$_x$ | CO | Part | Lead | UnRHC |
|---|---|---|---|---|---|---|---|
| Max #/day | + 1 | | | | | | + 8 |
| Actual w/internal BACT #/day | + 1 | | | | | | + 8 |
| Actual w/o BACT #/day | + 1 | | | | | | + 8 |

==========================================================================
REGULATION XIII EXEMPT EMISSIONS (Indicate "+" or "-")
    Exempt by Rule 1304 (____)(____)

| CONTAMINANT | RHC | NO$_x$ | SO$_x$ | CO | Part | Lead | UnRHC |
|---|---|---|---|---|---|---|---|
| Max #/day | | | | | | | |
| Actual #/day | | | | | | | |

==========================================================================
MITIGATIONS ACHIEVED CONCURRENT WITH THIS APPLC'N (Indicate "+" or "-")

| APPLIC'N NUMBER | RHC #/day | NOx #/day | SO$_x$ #/day | CO #/day | Part #/day | Lead #/day | UnRHC #/day |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Engineer _John_ Date _3/29/8_   Reviewing Engineer _____ Date _APR 5 1985_

Revised 10/83

SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT
ENGINEERING DIVISION
APPLICATION PROCESSING AND CALCULATIONS

| APPL. NO. | DATE |
|---|---|
| 129457 | 7-29-85 |
| PROCESSED BY | CHECKED BY |
| SD | |

ALBA INDUSTRIES INC
4301 VALLEY BL
LOS ANGELES

EQUIPMENT DESCRIPTION

129457
OPEN SPRAY EQUIPMENT, DEVILBISS, WITH ONE BINKS
GLUE SPRAY GUN AND ONE 2½ GALLON MATERIALS
RESERVOIR

130398
OPEN SPRAY EQUIPMENT, DEVILBISS, WITH TWO BINKS GLUE
SPRAY GUNS AND TWO 2½ GALLON MATERIALS RESERVOIRS

GENERAL BACKGROUND AND HISTORY
APPLICANT OPERATES THREE OTHER DEVICES
WITH PERMITS. THESE APPLICATIONS ARE IN RESPONSE
TO N/A DATED 1-17-85

PROCESS DESCRIPTION
FIRM SPRAYS ADHESIVE ONTO WOOD FRAMES TO
MANUFACTURE UPHOLSTERY

EMISSIONS EVALUATION
INSPECTOR OBSERVED NO OPACITY AND INDICATES LITTLE
POTENTIAL FOR NUISANCE
ADHESIVE IS COMPOUNDED ENTIRELY WITH 1,1,1 TRI
CLORO ETHANE AS SOLVENT, APPROX 8 LB PER GALLON.
THE TOTAL CONSUMPTION IS 60 LB ADHESIVE PER DAY

60 × .8 = 48 LB PER DAY OF NRHC EXEMPT
SOLVENT. FOR BEER ~~RED~~ ACCOUNTING ASSUME
+ 1 LB/DAY VOC ON EACH SPRAY STATION.

RECOMMENDATION
ISSUE PERMITS TO OPERATE
WITH CONDITIONS SPECIFYING
EXEMPT SOLVENTS, ALLOWING
25% PEAK DAY PRODUCTION OVER
~~THE~~ AVERAGE PRODUCTION.

# ENGINEERING DIVISION····MEMORANDUM

| TO | FROM | DATE |
|---|---|---|
| FILES | DOBRIN | 2-21-85 |

| REFERENCE | | | | PERMIT APPL. NO. |
|---|---|---|---|---|
| ALBA | IND | NO. 015526 | | 129457 |

SUBJECT: TC & AI          R.G. ALBA (RICHARD)

(213) 225 4181

2/21/85 DISPLAY #18 SHOWS THAT ONLY ONE
APPLICATION HAS BEEN FILED. APPLICANT
PROVIDED TWO SIGNED APPL FORMS. WILL
PHANTOM ONE OF THEM

2/21/85 LEFT MESSAGE FOR R.G. ALBA
TO CALL ME BACK. (AIRLESS OR,
WHY NOT ENCLOSURE FOR EXHAUST,)
(CUT BACK SOLVENT AND WASH
SOLVENT)  (SECOND APPLICATION FEE)

2/22/85 Returned call, I was not here,
I returned his call he was not there

2/22/85 ALBA SAYS LACQUER THINNER
USED FOR CLEAN-UP- 1 GAL PER DAY
HE WILL SEND SECOND APP;
WORK STATION COULD BE ENCLOSED,
BUT WOULD HINDER WORK.
WELLER-WHITE CHEM   1171 N. TUSTIN
92807, 714-630-1234 MAKES THE
BONDWELL ADHESIVE. HIS SPEC SHEET
SAYS "CONTAINS CHLORINATED SOLVENTS
22%       Me Cl₂ + 1,1 TRICHLOR
RECOMMENDS THINNING WITH 1,1,1 TRI
CHLOR

3/11/85 LEFT CALL FOR WHITE TO CALL ME BACK
3/11/85 WHITE CALLED TO SAY MATERIAL IS
100% TRICHLOR SOLVENT SYSTEM, 22% SOLIDS

2.  Description of Equipment

The equipment used in the glue application operation is as follows:

a)  One each of two stations

   (1)  Binks Model #18 spray gun.

   (2)  2½ gallon De Vilbess pressurized glue pot.


3.  Description of Process

The process of each station consists of one operation, mainly the spraying of an adhesive, Bond Well C1040, onto a chair frame, for the purpose of adhearing polyurethane foam to the frame members. The adhesive is pressurized to 80 lbs. PSI in a 2½ gallon De Vilbess glue pot and applied via a Binks Model #18 spray gun. Station #1 uses one gun and pot, while Station #2 uses two of each.

Bond Well Adhesive C1040 contains the solvent 111-Tricloroethane in a concentration of 80%, that is to say eight pounds per gallon.


4.  Operaion Schedule

   a)  Station #1 is used for approximently one hour per day, five days per week.

   b)  Station #2 is uses eight hours per day, five days per week.


5.  Process Weight

   a)  Station #1 consumes 10 lbs. of adhesive per day.

   b)  Station #2 consumes 50 lbs. of adhesive per day.

**SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT**

**ENGINEERING DIVISION**
**APPLICATION PROCESSING AND CALCULATIONS**

| PAGES | PAGE |
|---|---|
| APPL. NO. | DATE |
| PROCESSED BY | CHECKED BY |

PRELIM ANALYSIS

ASSUME ADHESIVE HAS SOME VOC
APPLICANT STATES 111TCE IS 8.0 LB/GAL
W = WEIGHT MATERIAL LB/GAL
X = OTHER THAN 111TCE, ASSUME 1.0 SP.G

$$VOLUME = \frac{8.00}{1.346 \times 8.33} + \frac{X}{8.33} = 1 \; GAL$$

$$= 0.71 + \frac{X}{8.33} = 1$$

X = .29 × 8.33 = 2.41 LB/GAL, TOTAL = 10.41 LB/GAL
ASSUME VOC/SOLIDS = 1:1
THEN VOC = ½ × (10.41 − 8.0) = 1.2 #/gal

IF SO — THEN THESE TWO SPRAY STATIONS
ACCOUNT FOR 60 #/DAY, OR

$$\frac{60}{10.41} = 5.76 \; GAL, \quad 5.76 \times 12 = 6.91 \; (69)$$

LB VOC. FACILITY WILL NOT VIOLATE
+68 LB/DAY VOC FOR NEW EQUIPMENT.

— OR 150 LB/DAY OR 31 LB/DAY .. IF
EQUIPMENT WAS INSTALLED SINCE
1976

# NOTICE TO APPLY FOR PERMIT

FIRM NAME (DBA): *ALBA Industries*                                    PHONE *225-4181*

OWNERSHIP: *Corp.*                          INSTALLING CONTRACTOR

MAILING ADDRESS: *4301 Valley Blvd., Los Angeles 90032*     ZIP    MAILING ADDRESS

EQUIPMENT ADDRESS: *Same*                                           PHONE

YOU ARE HEREBY NOTIFIED THAT PURSUANT TO THE CALIFORNIA STATE HEALTH AND SAFETY CODE SECTIONS 42300 AND 42400 AND
THE SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT RULES AND REGULATIONS A MISDEMEANOR HAS BEEN COMMITTED THROUGH THE
(BUILDING, ERECTION, ALTERATION, REPLACEMENT, USE OR OPERATION) OF:

*Open Spray Station - one conventional*
*gun used for Bond-well Adhesive*
*(contains 1,1-trichloroethane)*

WITHOUT FIRST OBTAINING SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT PERMIT(S). IF THE APPLICATION(S) FOR THE ABOVE
EQUIPMENT HAS NOT BEEN RECEIVED WITHIN 14 CALENDAR DAYS (DUE DATE *1-31-85*), A MISDEMEANOR COMPLAINT MAY BE
FILED IN MUNICIPAL COURT.

SERVED TO: *Richard Alba*           Edward Camarena          DATE SERVED: *1-17-85*
                                    DIRECTOR OF ENFORCEMENT                 *213 573-6186*
TITLE: *Sec.-Treas.*        SERVED BY: *Edna Beach*   TEL. NO.

THE FOLLOWING FORMS ARE LEFT HEREWITH:

☒ APPLICATION FORMS 400A      ☒ PERMIT INFORMATION, 400B      ☒ PERMIT INSTRUCTION, 400C      ☐ 400

| REASON PERMIT REQUIRED: | ☒ (NEW CONSTRUCTION) ☒ NO PRIOR PERMIT | ☐ (LESSEE) ☐ OWNER CHANGE | ☐ ALTERATION | ☐ LOCATION CHANGE | T.S. NO. *WE* | I.D. NO. *15576* |

NAME OF PRIOR PERMITEE:                          FORMER PERMIT NO.             PT. SOURCE: YES ☐  NO ☒

## SECTION 1   COMPLETE THIS SECTION EACH TIME A NOTICE IS SERVED.    DATE OF INSPECTION: *1-17-85*

ESTIMATED % COMPLETE: *100 %*   WAS EQUIPMENT IN OPERATION: ☐ NO  ☒ YES    ANY VISIBLE EMISSIONS: ☒ NO  ☐ YES-    % OPAC:

COMPLETION DATE: *Many years ago*   EQUIP. IS: ☒ BASIC ☐ CONTROL   EST. COST:   BASIC EQUIP: $ _____   A.P.C. EQUIP: $ _____

IF FOR CONTROL EQUIP.
PERMIT STATUS OF BASIC?:

IF ALTERATION, BRIEFLY DESCRIBE CHANGE:

PROCESS DESCRIPTION & FINDINGS (NUISANCE EVALUATION, POSSIBLE EMISSIONS, ODORS, ETC.):

*Firm sprays approximately 55 gal/mo*
*Bond-well Adhesive for upholstering*
*furniture.*

*Nuisance potential slight - industrial*
*area.*

EQUIPMENT MAY VIOLATE SECTION 41700 :  ☒ NO  ☐ YES        RECOMMENDED FOR PERMIT: ☐ NO  ☒ YES  ☐ OTHER

ENGINEERING FINAL ACCOMPLISHED:    ☒ NO-?                          ☐ YES - SEE SECTION 2

SECTION 2. TO BE COMPLETED ONLY IF ENGINEERING FINAL ACCOMPLISHED.  IN ADDITION, COMPLETE APPROPRIATE SECTION A, B OR C ON
REVERSE.  USE SEPARATE FORM FOR EACH FINAL.

WIND: ☐ N. ☐ E ☐ S ☐ W   WEATHER: ☐ CLEAR   ☐ OVERCAST   ☐ RAIN   ☐ OTHER, EXPLAIN:

40D454-R777

## A - BAKE OVEN

| OVEN MANUFACTURER, MODEL NO. & SERIAL NO. | OUTSIDE DIMENSIONS OF OVEN |
|---|---|
| | WIDE X_____ L GTH.X_____HGT |

| FAN DATA: | MAKE | MODEL | SIZE | CFM | HP |
|---|---|---|---|---|---|
| 1. EXHAUST FAN | | | | | |
| 2. CIRCULATING FAN | | | | | |
| 3. BURNER BLOWER | | | | | |
| 4. OTHER | | | | | |

NORMAL FUEL (DESIGN RATING):

☐ NATURAL GAS                     CFH:            ☐ DIRECT FIRED    ☐ INDIRECT FIRED

☐ ELECTRIC -   ☐ ELEMENTS;   ☐ INFRA-RED - NO._____   WATTS_____:   TOTAL RATED KVA OR KW

☐ OTHER-TYPE:                     RATE        STANDBY FUEL:   ☐ NO   ☐ YES-TYPE

| NORMAL OP. SCHEDULE·        HRS/DAY        DAYS/WK | LIST ALL CONTENTS PROCESSED IN OVEN: |
|---|---|

ARTICLES NORMALLY PROCESSED:

| | COATING | GAL/DAY | ADDED THINNER | GAL/DAY |
|---|---|---|---|---|
| | ENAMEL : | | | |
| OP. TEMP: NORMAL____°F   MAXIMUM____°F | LACQUER : | | | |
| OP. IS: ☐ CONT.   ☐ BATCH -   MINS/BATCH | : | | | |
| AVG. TIME BETWEEN COATING & BAKING:   MINS. | MAX.COMBINED USE/DAY : | | | |
| OBSERVED TEMP:   °F & MATERIAL IN OVEN: | TIME MATERIAL IN OVEN _____   MIN. | | | |

## B - SPRAY BOOTH

| BOOTH MANUFACTURER, MODEL NO. & SERIAL NO. | DIMENSIONS OF BOOTH |
|---|---|
| | WIDE X_____ LGT X_____HGT |

| BOOTH TYPE: | USUAL OPERATING SCHEDULE: | PARTS SPRAYED ARE |
|---|---|---|
| ☐ FLOOR   ☐ BENCH   ☐ AUTOMOTIVE | HRS/DAY   DAYS/WK | OVEN DRIED:   ☐ NO   ☐ YES |

| ARTICLES NORMALLY SPRAYED: | OBSVD. MATERIAL SPRAYED: |
|---|---|

| ARTICLES OBSVD. SPRAYED: | LIST ALL TYPES OF MATERIAL SPRAYED |
|---|---|

| EXHAUST CONTROL¹   ☐ NONE   ☐ WATERWASH   ☐ FILTERS | COATING | GAL/DAY | ADDED THINNER | GAL/DAY |
|---|---|---|---|---|
| | ENAMEL : | | | |
| NO. & SIZE OF EXHAUST FILTERS: | LACQUER : | | | |
| EXHAUST FAN HORSEPOWER:   FAN MODEL NO | : | | | |
| WATER PUMP HORSEPOWER:   MANOMETER RDG. | MAX.COMBINED USE/DAY : | | | |

## C - DEGREASER

| DEGREASER MANUFACTURER, MODEL NO. & SERIAL NO. | OUTSIDE DIMENSIONS OF TANK |
|---|---|
| | WIDE X_____ LGT_____HGT |

HEATING SOURCE & RATING:
☐ NONE   ☐ ELECTRIC_____KILOWATTS   ☐ GAS_____BTU/HR        ☐ OTHER_____

| LIST ALL TYPES AND QUANTITY OF DEGREASER SOLVENT USED: | CONDENSER: |
|---|---|
| TRICHLOROETHYLENE_____55 GAL. DRUMS PER MONTH | ONCE THROUGH WATER ☐   RECIRCULATING WATER ☐   REFRIGERANT ☐ |
| PERCHLOROETHYLENE_____55 GAL. DRUMS PER MONTH | |
| 111 TRICHLOROETHANE_____55 GAL. DRUMS PER MONTH | USUAL OPERATING SCHEDULE: ___HRS/DAY ___DAYS/WK ___WKS/YEAR |
| OTHER (DESCRIBE)_____ (ANY OTHER CONVENIENT MEASURE MAY BE USED) | H.P. OF PUMP USED IN SPRAY DEGREASING: ___   COVER: YES ☐   NO ☐ |

## ENGINEERING DIVISION ACTION

| RECOMMENDED DISPOSITION: | ☐ APPROVE FOR PERMIT | ☐ APPROVE FOR PERMIT SUBJECT TO CONDITIONS LISTED BELOW | ☐ HOLD, SEE EXPLANATION BELOW | ☐ DENY PERMIT |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| ACTION BY (SIGNATURE): | DATE: |
|---|---|

| REVIEWING ENGINEER    DATE | ☐ I CONCUR WITH RECOMMENDATION | ☐ I DO NOT CONCUR WITH RECOMMENDATION | ☐ SEE COMMENTS ON ATTACHED PAGE |
|---|---|---|---|

40D455-R777

# Exhibit E

| OUTH COAST AIR QUALITY MANAGEMENT DISTRICT | PAGES | | PAGE |
|---|---|---|---|
| | 2 | | 1 |
| **ENGINEERING DIVISION** | APPL NO | | DATE |
| | 149553-554 | | Dec. 20, 1988 |
| APPLICATION PROCESSING AND CALCULATIONS | PROCESSED BY | | CHECKED BY |
| | Gordon | | |

SUMMARY OF CHANGE OF LOCATION AND CHANGE OF OWNERSHIP FOR ALBA INDUSTRIES.

Alba Industries is moving their coating operations from 4301 Valley Blvd in Los Angeles to 4335 Valley Blvd in Los Angeles. These properties are contiguous which is shown on their plot plan. Alba Industies had four spray booths operating at the 4301 location. Two of these spray booths were relocated to the 4335 location. Permit numbers for these two booths are M059322 and P58001. Prior to Alba moving to the 4335 location there were two spray booths owned and operated by the Square D Company at this location.. Permit numbers for these two booths are A08745 and P00194.

Alba's intentions are to move two of their booths into the new location and to use the two booths that are already there for a combined total of four booths to maintain their coating operations  The two booths left at the 4301 location are to remain inoperative.

The operating parameters that the four spray booths at the 4301 location were under was 24 gallons of coating and solvent for the entire plant in a 24 hour period. The two spray booths that were originally at the 4335 location had permits that were issued prior to 1976 and did not have specific operating limits for gallons of coating used other than Rule 66.

In consult with Fred Lettice (unit supervisor) it was agreed upon that Alba Industries could have the following usage condition at the new location:

1)  The 24 gallons of usage from the 4301 location plus

| OUTH COAST AIR QUALITY MANAGEMENT DISTRICT | PAGES 2 | PAGE 2 |
|---|---|---|
| **ENGINEERING DIVISION** | APPL NO 149553-554 | DATE Dec. 20, 1988 |
| **APPLICATION PROCESSING AND CALCULATIONS** | PROCESSED BY Gordon | CHECKED BY |

2)   The gallons of coating that the Square D Company used per day based on the last two years of operation prior to the cessation of their production.

On December 14, 1988 Alba submitted information on the amount of coating that the Square D Company used during the previous two years before they discontinued their coating operations.  As indicated in Alba's letter dated December 14, 1988, the Square D Company used an average of 7 gallons per day for the previous 24 months prior to their shut-down.

In conclusion, Alba Industries will be issued new operating permits for each of their four spray booths at the location at 4335 Valley Blvd in Los Angeles.  These permits will contain an operating condition that will limit the facility to 31 gallons of coating and or solvent usage per day.

# Exhibit F

```
REPORT      ISR107                                                                                      PAGE
RUN DATE :  _/29/1992
```

BUSINESS INVENTORY LIST
REQUESTOR RESPONSE TO HAZARDOUS MATERIALS INVENTORY

```
BUSINESS NUMBER : 000882-4                          RFI REQUEST NO   : 002609-4
BUSINESS NAME   : ALBA INDUSTRIES, INC.            RFI REQUESTOR NAME: AMY SYLVESTER
BUS MAIL ADDRESS: 4335 VALLEY BLVD
                  LOS ANGELES CA 90032
STORAGE ADDRESS : 4335 E VALLEY BL
```

| PRODUCT NAME INGREDIENT NAME | RAW WASTE | MAX QUANTITY ON HAND | YEARLY QUANTITY | PRODUCT STORAGE TYPE |
|---|---|---|---|---|

× FOLLOWING INVENTORIES CURRENTLY USED OR STORED BY THE BUSINESS :

| PRODUCT NAME / INGREDIENT NAME | RAW WASTE | MAX QUANTITY ON HAND | YEARLY QUANTITY | PRODUCT STORAGE TYPE |
|---|---|---|---|---|
| LC 1347 SEATTLE PRECATALIZED LACQUER<br>TOLUENE<br>ETHYLENE GLYCOL, MONOBUTYL ETHER<br>XYLENE<br>ISOBUTYL ALCOHOL<br>ISOBUTYL ACETATE<br>METHYL ETHYL KETONE<br>METHYL AMYL KETONE<br>ISOPROPYL ALCOHOL | R | 55.00 GALLONS | 350.00 GALLONS | DRUMS, BARRELS, CARF |
| LC 1353 FLAT PRECATALIZED LACQUER<br>TOLUENE<br>ETHYLENE GLYCOL, MONOBUTYL ETHER<br>XYLENE<br>ISOBUTYL ALCOHOL<br>ISOBUTYL ACETATE<br>METHYL ETHYL KETONE<br>METHYL AMYL KETONE<br>ISOPROPYL ALCOHOL | R | 55.00 GALLONS | 495.00 GALLONS | DRUMS, BARRELS, CARB |
| LT2 LACQUER THINNER<br>ACETONE<br>METHYL ETHYL KETONE<br>ISOBUTYL ALCOHOL<br>ISOPROPYL ALCOHOL<br>TOLUENE<br>LACTOL SPIRITS<br>ETHYLENE GLYCOL, MONOBUTYL ETHER<br>METHYL AMYL KETONE | R | 110.00 GALLONS | 1,196.00 GALLONS | DRUMS, BARRELS, CARB |
| LC 1351 PRECATALIZED LACQUER SEALER<br>TOLUENE<br>ISOPROPYL ALCOHOL<br>ISOBUTYL ACETATE<br>METHYL ETHYL KETONE<br>METHYL AMYL KETONE<br>LACTOL SPIRITS | R | 110.00 GALLONS | 1,210.00 GALLONS | DRUMS, BARRELS, CARB |
| MO-811 MEDIUM OAK FINISH | R | 55.00 GALLONS | 660.00 GALLONS | DRUMS, BARRELS, CARB |

Case 1:25-bk-11455-MB Doc 45-2 Filed 09/19/25 Entered 09/19/25 16:47:16 Desc
Declaration of Tiffany R. Hedgpeth Page 54 of 59

PAGE

EPORT : I 107
UN DATE : 12/29/1992
BUSINESS INVENTORY LIST
REQUESTOR RESPONSE TO HAZARDOUS MATERIALS INVENTORY

USINESS NUMBER : 000082-4                              RFI REQUEST NO   : 002609-4
USINESS NAME   : ALBA INDUSTRIES, INC.                RFI REQUESTOR NAME: AMY SYLVESTER
US MAIL ADDRESS: 4335 VALLEY BLVD
                 LOS ANGELES CA 90032
TORAGE ADDRESS : 4335 E VALLEY BL

| PRODUCT NAME INGREDIENT NAME | RAW WASTE | MAX QUANTITY ON HAND | YEARLY QUANTITY | PRODUCT STORAGE TYPE | PHYS STA |
|---|---|---|---|---|---|
| TOLUENE 1ST MINERAL SPIRITS LACTOL SPIRITS 2ND MINERAL SPIRITS | | | | | |
| 0-707 MEDIUM WALNUT OIL RESIN FINISH TOLUENE 1ST MINERAL SPIRITS 2ND MINERAL SPIRITS | R | 55.00 GALLONS | 110.00 GALLONS | DRUMS, BARRELS, CARB | |
| HEVRON 350-B PAINT THINNER MINERAL SPIRITS | R | 55.00 GALLONS | 220.00 GALLONS | DRUMS, BARRELS, CARB | LIC |
| OND WELL C1040 ADHESIVE TRICHLOROETHANE DIETHYLENE ETHER METHYLENE CHLORIDE SYNTHETIC RUBBER RESINS ADDITIVE | R | 55.00 GALLONS | 250.00 GALLONS | DRUMS, BARRELS, CARB | LIC |
| ATALIZED UREA RESIN 1750 FORMALDEHYDE | R | 165.00 GALLONS | 2,310.00 GALLONS | DRUMS, BARRELS, CARB | LIC |
| 500 POLYVINYL ACETATE EMULSION ADHESIVE METHYLENE CHLORIDE | R | 55.00 GALLONS | 220.00 GALLONS | DRUMS, BARRELS, CARB | LIC |
| T-2 LACQUER THINNER CONTAMINATED WITH STAIN/PAINT/SEAL LT LACQUER STAIN SEALER LUBRICANT OIL WATER | W | 55.00 GALLONS | 220.00 GALLONS | DRUMS, BARRELS, CARB | |
| OLID WASTE WIPING FOAM CONTAMINATED WITH STAIN/LACQUER/WATER PAPER TOWELS CONTAMINATED WITH STAIN/LACQUER/VARNISH/WATER SPRAY BOOTH PAINT FILTERS CONTAMINATED WITH LACQUER/VARNISH/GLUE | W | 110.00 POUNDS | 1,200.00 POUNDS | DRUMS, BARRELS, CARB | LIC |
| AINT SLUDGE WATER LACQUER THINNER PAINT SLUDGE | W | 55.00 GALLONS | 330.00 GALLONS | DRUMS, BARRELS, CARB | LIC |

```
REPORT  :  SR107                                                                      PAGE
RUN DATE : 12/29/1992                     BUSINESS INVENTORY LIST
                          REQUESTOR RESPONSE TO HAZARDOUS MATERIALS INVENTORY


BUSINESS NUMBER : 000882-4                           RFI REQUEST NO   : 002609-4
BUSINESS NAME   : ALBA INDUSTRIES, INC.             RFI REQUESTOR NAME: AMY SYLVESTER
BUS MAIL ADDRESS: 4335 VALLEY BLVD
                  LOS ANGELES CA 90032
STORAGE ADDRESS : 4335 L VALLEY BL
```

| PRODUCT NAME INGREDIENT NAME | RAW WASTE | MAX QUANTITY ON HAND | YEARLY QUANTITY | PRODUCT STORAGE TYPE | P S |
|---|---|---|---|---|---|
| UNSPECIFIED SOLVENT MIXTURE<br>  LT 2 LACQUER<br>  MINERAL SPIRITS<br>  LUBRICANT OIL<br>  GREASE | W | 55.00 GALLONS | 220.00 GALLONS | DRUMS, BARRELS, CARB | L |
| STAINS | R | 360.00 GALLONS | .00 GALLONS | DRUMS, BARRELS, CARB | L |
| PAINT | R | 250.00 GALLONS | .00 GALLONS | METAL CONTAINERS < 5 | L |
| VARNISH | R | 300.00 GALLONS | .00 GALLONS | DRUMS, BARRELS, CARB | L |
| ADHESIVE | R | 410.00 GALLONS | .00 GALLONS | DRUMS, BARRELS, CARB | L |
| DYNO LUBE | R | 55.00 GALLONS | .00 GALLONS | DRUMS, BARRELS, CARB | L |
| OXYGEN<br>  OXYGEN | R | 281.00 CUBIC FEET | .00 CUBIC FEET | COMPRESSED GAS CYLIN | C |
| ACETYLENE<br>  ACETYLENE | R | 114.00 CUBIC FEET | .00 CUBIC FEET | COMPRESSED GAS CYLIN | C |
| PETROLEUM OIL<br>  PETROLEUM OIL | R | 220.00 GALLONS | .00 GALLONS | DRUMS, BARRELS, CARB | L |
| LACQUER | R | 175.00 GALLONS | .00 GALLONS | DRUMS, BARRELS, CARB | |
| SEALER | R | 110.00 GALLONS | .00 GALLONS | DRUMS, BARRELS, CARB | |
| EXLENE | R | 35.00 GALLONS | .00 GALLONS | DRUMS, BARRELS, CARB | |

# Exhibit G



LEGEND:

⊠ - CEMENTED CLARIFIER.

☐ - PATCH.

○

〜 - CHAIN-LINK FENCE.

PARKING

SOIL PILE

STORAGE

STORAGE

ABANDONED CONTAINMENT AREA

DUST COLLECTION FACILITY

DISCARDED CONTAINERS OF PAINT

WOOD-WORKING AREA

CONCRETE PATCH WITH METAL LID

MACHINE SHOP

DRUM STORAGE

SANDING AREA

LOCKER AREA

INLET

JANITOR'S CLOSET

PARTS CLEANER

PANTING AREA

DRUM STORAGE

MACHINING AREA

SUMP

LUNCH ROOM

ASSEMBLY AREA

HAZARDOUS MATERIAL STORAGE AREA

HYDRAULIC LIFT BOX AND HYDRAULIC PISTON

DISTRIBUTION AREA

UPHOLSTRY AREA

STORAGE

DRIVEWAY

STOCKROOM

GLUING AND FINISH WORK

OFFICES

SHOWROOM AND EMPTY OFFICES

N

DRAWING NOT TO SCALE

FILE NO.: 26119   SUBJECT SITE DIAGRAM

4335 VALLEY BOULEVARD
LOS ANGELES, CALIFORNIA

SMITH-EMERY COMPANY

TECHNICAL ILLUSTRATION BY A.C.H

PLATE NO.: 3

# Exhibit H

**REMEDIAL COST ESTIMATE**
Former Nardon and Square D Sites
Los Angeles, California

| Task No. | Description | Units | Rate | Cost | Notes |
|---|---|---|---|---|---|
| Task 1 | Pre-Field Activities | 1 | $ 38,300 | $ 38,300 | Pre-field activities include HASP, staffing, retention of subcontractors, obtaining necessary permits and utility clearance. |
| Task 2 | Pilot Study and Verification Testing | 1 | $ 60,900 | $ 60,900 | Pilot study and treatability study work plan, implementation and reporting. |
| Task 3 | Source Area ISCO Implementation - Former Nardon Site | 1 | $ 577,000 | $ 577,000 | Full scale implementation on Former Nardon Site<br>Assume 20 injection locations in presumed source areas proximate to wells AB14 and AB19<br>Treatment zone depth of 17-40 feet bgs<br>Treatment duration of two years |
| Task 4 | Source Area ISCO Implementation - Former Square D Site | 1 | $ 450,000 | $ 450,000 | Full scale implementation on Former Square D Site<br>Assume 15 injection locations on Square D Site in presumed source area proximate to well W-3<br>Treatment zone depth of 17-40 feet bgs<br>Treatment duration of two years |
| Task 5 | Dual Phase Extraction (DPE) Expansion and Startup | 1 | $ 888,900 | $ 888,900 | Installation of 5 new DPE wells downgradient of presumed source areas proximate to AB14, AB19 and W-3, new conveyance piping, and upgraded AOP treatment system equipment |
| Task 6 | Remedial Implementation Report | 1 | $ 36,000 | $ 36,000 | |
| Task 7 | Subsequent ISCO Injections at Source Areas | 1 | $ 1,027,000 | $ 1,027,000 | Year 2 ISCO reinjection |
| Task 8 | DPE Operation and Maintenance | 5 | $ 241,500 | $ 1,207,500 | Operation of DPE System for 5 Years |
| Task 9 | Groundwater Monitoring and Reporting | | | | Quarterly for years 1-2, and semiannual for years 3-5. Groundwater samples collected from 41 locations plus 4 duplicates. |
| | Quarterly | 8 | $ 31,000 | $ 248,000 | |
| | Semiannual | 6 | $ 31,000 | $ 186,000 | |
| Task 10 | Regulatory Oversight | 5 | $ 25,000 | $ 125,000 | Estimated LARWQCB technical oversight fees |
| Task 11 | DPE Decommissioning | 1 | $ 158,300 | $ 158,300 | Treatment equipment cleaning and recycling and capping of conveyance lines. |
| Task 12 | Final Remedial Closure Report | 1 | $ 40,808 | $ 40,808 | |
| | **TOTAL** | | | $ 5,043,708 | |
| | **Contingency (15%)** | | | $ 756,556 | |
| | **TOTAL** | | | **$ 5,800,264** | |

Notes

1. Cost estimate includes targeted source area and boundary treatment on Former Nardon and Former Square D Sites in accordance with a negotiated site access agreement.

2. Targeted subsurface ISCO treatment zone will be 17 to 40 feet bgs.

3. Decommissioned dual-phase extraction system will be expanded to include four additional DPE wells, and installation of upgraded advanced oxidation process equipment.

4. Existing DPE infrastructure includes previously installed DPE wells, conveyance piping, treatment compound and discharge pipelines.

5. DPE wells will be installed downgradient of presumed source areas on Former Nardon and Square D Sites to optimize mass removal and capture potential chlorinated solvent degradation compounds.

6. Duration of remedy will be five years.

